UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
MIAO XIN HU, *on behalf of herself and all others similarly situated*,

                Plaintiff,

        - against -

IOVATE HEALTH SCIENCES U.S.A. INC.,

                Defendant.
-----------------------------------------------------------x

**Case No. 1:17-cv-09427**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

## I. INTRODUCTION

This case is a consumer protection action arising out of the deceptive and otherwise improper business practices that Defendant, Iovate Health Sciences U.S.A., ("Iovate" or "Defendant"), engages in with respect to the packaging of its 1.5 lbs. container of protein powder—Herbal Zen Nutrition™ Plant-Based Protein (the "Product" or "Herbal Zen").

Herbal Zen is deceptively marketed because it contains substantial amounts of non-functional slack-fill. Slack-fill is air or filler material within a packaged product. Non-functional slack-fill is slack-fill that serves no legitimate purpose and thus misleads consumers about the quantity of food they are purchasing. When consumers purchase a container of Defendant's Product, they are receiving less protein powder than they bargained for, because the size of the Herbal Zen containers in comparison to the volume of the protein powder contained therein makes it appear to consumers that they are buying more than what is actually being sold. They pay for a full container of the Product but actually receive far less. In engaging in the foregoing practice, Defendant violates the Federal Food Drug & Cosmetic Act ("FDCA") Section 403(d) (21 U.S.C. 343(d)), the Code of Federal Regulations Title 21 part 100, *et. seq.*, and the consumer protection laws of New York state, NY GBL §§ 349, 350, as well as the consumer protection laws of the other forty-nine states and the District of Columbia.

Plaintiff Miao Xin Hu ("Plaintiff Hu" or "Plaintiff") was among those injured by Defendant's unlawful and deceptive practices when she paid $19.97 for the Product at a GNC store but received substantially less protein powder than she reasonably expected owing to the non-functional slack-fill in the container. On December 1, 2017, Plaintiff Hu filed a Class Action Complaint ("Complaint") seeking redress for her injury and the injuries suffered by thousands of other similarly situated consumers. Plaintiff Hu now brings this motion for partial summary

judgment on the issue of the non-functionality of the slack-fill in Herbal Zen. As detailed below, there is no genuine issue of fact that, <u>at a minimum</u>, Herbal Zen contains non-functional slack-fill in the amount corresponding to the volume occupied by 0.5 lbs of protein powder or, in the alternative, in the amount corresponding to 1 inch of the Herbal Zen container's vertical capacity. Whether Herbal Zen contains additional non-functional slack-fill beyond this proven minimum should be reserved for trial.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the record "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment may be granted when no reasonable trier of fact could find in favor of the non-moving party." *Something Old, Something New, Inc. v. QVC, Inc.*, 1999 US Dist LEXIS 18878, at *4 (SDNY Dec. 7, 1999). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether there is a genuine issue of material fact, the court "must resolve all ambiguities and draw all reasonable inferences against the movant." *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 (2d Cir. 2010).

"The burden of demonstrating that no factual dispute exits rests on the party seeking summary judgment… Once this burden has been met, the non-moving party must come forward with specific facts showing that a genuine issue of material fact exists for trial." *Something Old, Something New,* 1999 US Dist LEXIS 18878, at *3-4. However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). "Conclusory

allegations, conjecture, and speculation are insufficient… to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d. Cir 1998). Nor may the non-moving party "rest upon the mere allegations or denials of his pleading." *Celotex*, 477 U.S. at 322 n. 3. Rather, the non-moving party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Id*. at 322-23. If the evidence offered by the non-movant is "merely colorable" or "not significantly probative," summary judgment may be granted. See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-252 (1986) (the "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find [for the non-moving party]").

### III. THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING THE NON-FUNCTIONALITY OF PART OF DEFENDANT'S SLACK-FILL

#### A. FDA Regulations And Their Incorporation Into New York Law

Under § 403(d) of the FDCA (21 U.S.C. § 343(d)), a food shall be deemed to be misbranded "[i]f its container is so made, formed, or filled as to be misleading." The FDA has implemented § 403(d) through 21 C.F.R. § 100.100, which states:

> In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.
>
> (a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:
>
> (1) Protection of the contents of the package;
>
> (2) The requirements of the machines used for enclosing the contents in such package;
>
> (3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

The FDA has defined non-functional slack-fill as any slack-fill in excess of that required to achieve the functional purposes listed in 21 C.F.R. § 100.100(a):

FDA advises that the exceptions to the definition of "nonfunctional slack-fill" in § 100.100(a) apply to that portion of the slack-fill within a container that is necessary for, or results from, a specific function or practice, e.g., the need to protect a product. <u>Slack-fill in excess of that necessary to accomplish a particular function is nonfunctional slack-fill.</u> Thus, the exceptions in § 100.100(a) provide only for that amount of slack-fill that is necessary to accomplish a specific function.

58 FR 64123, 64126 (emphasis added).

Thus, the possibility that some portion of the slack-fill in Defendant's Product may be justified as functional based on the exceptions listed under §100.100(a) does not justify slack-fill that is in excess of that required to serve a legitimate purpose—protecting contents, accommodating the machines that enclose the contents, accommodating settling, etc. Such slack-fill serves no purpose other than to mislead consumers about the quantity of food they are actually purchasing.

The food labeling laws and regulations of New York impose requirements that mirror federal law. New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded … If its container is so made, formed, colored or filled as to be misleading." Moreover,

5

Part 259.1 of Title 1 of the New York Codes, Rules and Regulations (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

> For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 et seq.], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10…

1 NYCRR § 259.1(a)(2).

Moreover, courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions"); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA.").

### B. Purely Inspired™ Proves That Herbal Zen Contains Non-Functional Slack-Fill

That there is no genuine question of material fact concerning the non-functionality of much of the slack-fill in Herbal Zen is proven by Defendant's very own 2.0 lbs Purely Inspired™ Plant-Based Protein powder (herein "Purely Inspired"). Herbal Zen and Purely Inspired are packaged in <u>the very same container</u>. In both cases, the container is approximately 7 inches in height, with a 0.25 inch sealed portion at the top, and thus 6.75 inches of vertical capacity. In both cases, the diameter is approximately 4.75 inches. Declaration of C.K. Lee in Support of Plaintiff's

Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Lee Decl."), **Exhibit A**. Indeed, both containers are produced by the same manufacturer, Custom Blow Molding. Lee Decl., **Exhibit B**.

Aside from quantity, the contents of Herbal Zen and Purely Inspired are also identical. A 32g serving of each contains the very same nutritional values. Lee Decl., **Exhibit C**. The ingredients are also identical. Lee Decl., **Exhibit D**. In fact, both products claim to have received the very same award from The American Masters of Taste, "a prestigious panel of chefs and flavor experts," indicating once again that they are one and the same product. Lee Decl., **Exhibit E**. Finally, both products are distributed by the very same party, Defendant itself. Lee Decl., **Exhibit D**.

Thus, the only substantive difference between the two products is that whereas Herbal Zen contains 1.5 lbs. of protein powder, Purely Inspired contains 2.0 lbs. of (the same) protein powder. Since both products' ingredients and containers are identical, this discrepancy demonstrates that there was no functional obstacle that prevented Defendant from packing an additional 0.5 lbs. in the Herbal Zen container. Put another way, nothing prevented Defendant from filling the Herbal Zen container with 33% more protein than it actually contains. For this reason, the empty space in Herbal Zen that could have been filled with another 0.5 lbs. of protein powder constitutes non-functional slack-fill.

None of the six FDA safe-harbors listed under 21 C.F.R. § 100.100(a) can justify or even explain this discrepancy. The need to protect package contents could not have prevented Defendant from filling Herbal Zen 33% higher because this requirement did not prevent Defendant from filling Purely Inspired to this level, when both the containers and their contents are identical (§100.100(a)(1)). Likewise, since Defendant's machines were capable of enclosing a volume

corresponding to 2.0 lbs. of protein powder in Purely Inspired, they were also capable of enclosing the same volume in Herbal Zen, as both containers and their contents are identical (§ 100.100(a)(2)). Purely Inspired also demonstrates that settling cannot explain all of the slack-fill in Herbal Zen. Both products are distributed by the same entity, and since settling did not reduce the fill level in Purely Inspired to that of Herbal Zen, settling cannot explain why Herbal Zen has the fill level that it has (§ 100.100(a)(3)).

FDA safe harbors § 100.100(a)(4)-(6) likewise fail to explain why the fill level in Herbal Zen is not higher than it is, since they did not prevent the fill level in Purely Inspired from being higher. § 100.100(a)(4) cannot explain the difference in fill level because neither product's container has a "specific function" lacked by the other. § 100.100(a)(5) cannot explain the difference because neither product container is any more reusable than the other, or has any special value which the other lacks.

Nor can § 100.100(a)(6) exonerate the slack-fill in Herbal Zen. Defendant does not suffer from any "[i]nability to increase level of fill" because it already has increased the level of fill in Purely Inspired, which is identical to Herbal Zen in all but name. Defendant also does not suffer from any "[i]nability to… further reduce the size" of the Herbal Zen container because it already packages a very similar product, Purely Inspired Organic Greens ("Organic Greens"), in containers that are significantly smaller than Herbal Zen. As shown in Lee Decl., **Exhibit F**, the 8.57 oz. Organic Greens is packaged in a container that is less than 6 inches in height and 3.5 inches in diameter, significantly smaller than Herbal Zen, which is 7 inches in height and 4.75 inches in diameter. And as revealed by Defendant's advertisement on iHerb.com, the 7.17 oz. Organic Greens is packaged in a container that is only 4.5 inches in height and 3.6 inches in diameter. Lee Decl., **Exhibit F**.

In marketing Organic Greens, Defendant implicitly acknowledges that containers significantly smaller than Herbal Zen can "accommodate required food labeling… discourage pilfering, facilitate handling, or accommodate tamper-resistant devices." The two Organic Greens containers display the same amount of information as Purely Inspired and Herbal Zen. Also like Purely Inspired and Herbal Zen, they can accommodate the tamper-resistant plastic wrapping at the top. The size of the Organic Greens containers also "facilitiate[s] handling." There is no reason to think that these smaller containers would be more difficult to handle. If anything, the handling would be easier. The size of Organic Greens containers also suffices to "discourage pilfering." The pharmacies that sell or have sold Herbal Zen or Purely Inspired routinely sell all manner of products smaller than Organic Greens without being deterred by the possibility of theft. For all these reasons, Defendant would have encountered no difficulty reducing the size of the Herbal Zen container by 25% in order to make it more proportional to its contents. Since Herbal Zen contained 25% less protein powder than Purely Inspired, the container could have been 25% smaller. We know that Defendant could have reduced the size of its containers because <u>it has already done so</u>.

Plaintiff's visual measurements approximate what one would expect to find given that (1) the two protein powders are chemically identical, (2) the product containers are identical, and (3) Purely Inspired contains 0.5 lbs. more protein powder. Whereas the protein powder in Herbal Zen fills the bottom 4 inches of the container, leaving 2.75 inches of slack-fill, the protein powder in Purely Inspired fills 5 inches of the available space, leaving 1.75 inches of slack-fill. The Herbal Zen container is 59% full with 41% slack-fill. The Purely Inspired container is 74% full with 26% slack-fill. *See* Complaint ¶¶ 29-31; Lee Decl., **Exhibit G**. This discrepancy proves that at least 15% of the space in the Herbal Zen product is comprised of non-functional slack-fill. The slack-

fill in Purely Inspired may or may not all be functional, but it demonstrates that any slack-fill in excess of 26% in Herbal Zen is certainly non-functional.  Purely Inspired proves that none of the six safe harbors enumerated in 21 C.F.R. § 100.100 can explain Defendant's failure to fill Herbal Zen to 5 inches, because these considerations did not prevent Defendant from filling Purely Inspired—an otherwise identical product—to 5 inches.

### IV. CONCLUSION

Whatever real constraints <u>might</u> justify the level of slack-fill in Purely Inspired cannot explain the slack-fill beyond that level in Herbal Zen, and "[s]lack-fill in excess of that necessary to accomplish a particular function is nonfunctional slack-fill." 58 FR 64123, 64126.  Since the function of the slack-fill in both products is identical, there is no genuine question of material fact that Herbal Zen contains significant amounts of non-functional slack-fill.  For this reason, Plaintiff respectfully asks the Court to rule that the Herbal Zen container contains non-functional slack-fill in an amount that, at a minimum, corresponds to the volume of 0.5 lbs. of Herbal Zen protein powder.  In the alternative, Plaintiff asks the Court to rule, pursuant to Plaintiff's visual estimates, that the Herbal Zen container contains at least 1 inch of vertical non-functional slack-fill.  Whether Herbal Zen also contains additional non-functional slack-fill beyond the aforementioned amounts should be reserved for trial.

Dated: March 21, 2018

                Respectfully submitted,

                */s/ C.K. Lee*
                By:  C.K. Lee, Esq.

                **LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

Case 1:17-cv-09427-ER Document 17 Filed 03/21/18 Page 11 of 12

11

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2018, I caused the foregoing Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment Against Defendant to be served via ECF upon all counsel of record.

                        */s/ C.K. Lee*
                        C.K. Lee, Esq.