**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

MIAO XIN HU, *on behalf of herself and*
*others similarly situated*,

                                                 Case No. 1:17-cv-09427

            Plaintiff

            v.

IOVATE HEALTH SCIENCES U.S.A., INC.,

            Defendant.

-------------------------------------------------------- x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS CLASS ACTION COMPLAINT**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………………ii

INTRODUCTION    …………………………………………………………………1

ARGUMENT ………………………………………………………………………4

    I.    PLAINTIFF'S NATIONWIDE CLASS CLAIMS ARE VIABLE………………4

        a.   The Court Has Jurisdiction Over Iovate As To The Claims of
            Out-of-State Class Members ………………………………………………4

        b.   The Court Should Not Strike Nationwide Class Allegations
            Under Rule 12(f)…………………………………………………………8

    II.   A REASONABLE CONSUMER WOULD BE DECEIVED BY
        DEFENDANT'S PRODUCT PACKAGING ………………………………9

    III.  PLAINTIFF WAS INJURED BY DEFENDANT'S CONDUCT………………16

    IV.  PLAINTIFF HAS ADEQUATELY PLEADED COMMON LAW FRAUD …….23

SUMMARY AND CONCLUSION………………………………………………...25

# TABLE OF AUTHORITIES

**Cases**

*Abele Tractor & Equip. Co., Inc. v. Balfour*,
  20 N.Y.S.3d 697 (App. Div.2015) ................................................................... 24, 25

*Ackerman v. Coca-Cola Co.*,
  No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ...................... 10, 12

*AM Tr. v. UBS AG*,
  78 F. Supp. 3d 977 (N.D. Cal. 2015) ........................................................................ 4

*Ambriz v. Coca Cola Co.*,
  13-cv-03539, 2014 U.S. Dist. LEXIS 9870 (N.D. Cal. Jan. 27, 2014) ........................................ 4

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ........................................................................................ 3

*Bautista v. Cytosport, Inc.*,
  No. 15-CV-9081 (CS), 2016 U.S. Dist. LEXIS 171468 (S.D.N.Y. Dec. 12, 2016) ................ 16

*Beach v. Citigroup Alt. Invs. LLC*,
  2014 U.S. Dist. LEXIS 30032 (S.D.N.Y. Mar. 7, 2014).......................................................... 4

*Dash v. Seagate Tech. (US) Holdings, Inc.*,
  27 F. Supp. 3d 357 (E.D.N.Y. 2014)...................................................................................... 18

*Day v. Air Methods Corp.*,
  17-cv-183, 2017 U.S. Dist. LEXIS 174693 (E.D. Ky. Oct. 23, 2017)........................................ 4

*Delgado v. Ocwen Loan Servicing, LLC*,
  No. 13-CV-4427, 2014 U.S. Dist. LEXIS 135758 (E.D.N.Y. Sep. 23, 2014)........................ 13

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002) ............................................................................................................ 5

*F.T.C. v. Cyberspace.com LLC*,
  453 F.3d 1196 (9th Cir. 2006) ................................................................................ 13

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
  624 F.3d 106 (2d Cir. 2010)........................................................................................ 2

*Feller v. Transamerica Life Ins. Co.*,
  16-cv-01378, 2017 U.S. Dist. LEXIS 206822 (C.D. Cal. Dec. 11, 2017) ................................ 5

*Fermin v. Pfizer, Inc.*,
  15-cv-2133, 2016 U.S. Dist. LEXIS 144851 (E.D.N.Y. Oct. 14, 2016)................................ 12

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*,
  No. 17-cv-00564 NC, 2017 U.S. Dist. LEXIS 155654, (N.D. Cal. Sep. 22, 2017).................. 5

*Gant v. Wallingford Bd. of Educ.*,
   69 F.3d 669 (2d Cir. 1995) ........................................................................................ 2

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) ......................................................................... 13

*Gurevich v. TJX Cos.*,
   2016 U.S. Dist. LEXIS 131562 (S.D.N.Y. Sep. 26, 2016) ...................................... 20

*Hanley v. Chicago Title Ins. Co.*,
   No. 12- 4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013)..................................... 2

*Hanson v. Denckla*,
   357 U. S. 235 (1958) .................................................................................................. 6

*Horton v. USAA Cas. Ins. Co.*,
    266 F.R.D. 360 (D. Ariz. 2009) .............................................................................. 4

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013)..................................................................... 13

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
   No. 09-2047, 2017 U.S. Dist. LEXIS 197612 (E.D. La. Nov. 28, 2017),........................... 5, 6, 7

*In re Frito-Lay N. Am., Inc.*,
   12-MD-2413, 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013) ................ 8

*In re Lilco Sec. Litig.*,
   111 F.R.D. 663 (E.D.N.Y. 1986) ............................................................................. 8

*In re. Real Estate Title & Settlement Servs. Antitrust Litig.*,
   869 F.2d 760 (3d  Cir. 1988) .................................................................................... 7

*Kacocha v. Nestle Purina Petcare Co.*,
   No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097 (S.D.N.Y. Aug. 11, 2016) ........... 18

*Lazaroff v. Paraco Gas Corp.*,
   967 N.Y.S.2d 867 (Sup. Ct.) ............................................................................. 20, 22

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) .................................................................................... 23

*Lonner v. Simon Prop. Grp., Inc.*,
   866 N.Y.S.2d 239 (App. Div 2008.) ....................................................................... 13

*MBIA Ins. Co. v. GMAC Mortg. LLC*,
    914 N.Y.S.2d 604 (Sup. Ct. 2010) ........................................................................ 25

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015)..................................................................................... 20

*Porwick v. Fortis Benefits Ins. Co.*,
   99 CV10122, 2004 U.S. Dist. LEXIS 24432 (S.D.N.Y. Dec. 3, 2004) ................... 21

*Rodriguez v. It's Just Lunch, Int'l*,
    2010 U.S. Dist. LEXIS 16622, 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) .......................... 18

*Samet v. P&G*,
    12-CV-01891, 2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) .............................. 11

*Seidman v. Stauffer Chem. Corp.*,
    Civil No. B-84-543 (TFGD), 1986 U.S. Dist. LEXIS 30264 (D. Conn. Jan. 17, 1986)............ 9

*Servedio v. State Farm Ins. Co.*,
    889 F. Supp. 2d 450 (E.D.N.Y. 2012)................................................................................ 18

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)............................................................................................... 23

*Singleton v. Fifth Generation, Inc.*,
    2016 U.S. Dist. LEXIS 14000, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) .......................... 18

*Sloan v. GM, LLC*,
    16-cv-07244, 2018 U.S. Dist. LEXIS 21176 (N.D. Cal. Feb. 7, 2018) .................................... 6

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) .......................................................................................................... 17

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
    No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sep. 22, 2015) ............. 13

*United States v. 174 Cases*,
    287 F.2d 246 (3d Cir. 1961)................................................................................................ 14

*Waldman v. New Chapter, Inc.*,
    714 F. Supp. 2d 398 (E.D.N.Y. 2010)................................................................................. 15

*Weisman v. LeLandais*,
    532 F.2d 308 (2d Cir. 1976) ................................................................................................. 2

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)............................................................................................... 13

*Woods v. Maytag Co.*,
    807 F. Supp. 2d 112 (E.D.N.Y. 2011)................................................................................... 2

**Statutes**

21 U.S.C. § 343(d) ................................................................................................................... 2

NY GBL § 349............................................................................................................ 16, 17, 20, 21

NY GBL § 350.................................................................................................................. 16, 17, 21

**Other Authorities**

58 FR 64123, 64126................................................................................................................... 2

58 FR 64123, 64129........................................................................................................... 9, 12, 14

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................... 2

Fed. R. Civ. P. 23............................................................................................... 7

Fed. R. Civ. P. 4(k) ........................................................................................... 7

**Regulations**

21 C.F.R. § 100.100(a).................................................................................. 2, 24

**INTRODUCTION**

Plaintiffs MIAO XIN HU ("Plaintiff") hereby respectfully submits this Opposition to Defendant IOVATE HEALTH SCIENCES U.S.A., INC.'s ("Iovate" or "Defendant") Motion to Dismiss the Complaint ("Def. Mem.").  On December 1, 2017, Plaintiffs brought a Class Action Complaint (herein "Complaint" or "Compl.") seeking redress for the unfair, deceptive and otherwise improper business practices according to which Defendant packages its 1.5 lbs Herbal Zen protein powder product (herein, "Herbal Zen" or the "Product").  Defendant filed its Motion to Dismiss on March 27, 2018, which Plaintiff here opposes.

The Product is packaged in a non-transparent cylindrical container that is approximately 7 inches in height with a 0.25 inch sealed portion at the top and 6.75 inches of vertical capacity. However, the protein powder inside only fills the bottom 4 inches, or 59%, of the available space. Thus, 2.75 inches, or 41%, of the available space consists in empty air.

The size of Herbal Zen containers in relation to the amount of protein powder actually contained therein makes it appear to consumers that they are buying more food than is actually being sold.  By increasing the size of the Product packaging and providing consumers with unnecessary empty space (or "non-functional slack-fill") rather than additional protein powder, Defendant deceptively induces consumers to make purchases they would not have made at the given prices had they been aware of the discrepancy between the size of the container and the amount of food inside.

Defendant attempts to caricature Plaintiff as complaining that the protein powder in Herbal Zen was "not filled to the brim." Def. Mem., pg. 1.  However, Plaintiff's reference point is not "the brim," but Defendant's own 2.0 lbs. Purely Inspired protein powder product ("Purely Inspired"). Both the contents and the container of Purely Inspired are nearly identical to Herbal Zen in all but name.  The only meaningful difference is that Purely Inspired is filled with 33% more protein

1

powder, such that the fill line reaches approximately 5 inches, or 74% of the available space, leaving only 1.75 inches, or 26% slack-fill.  *See* Compl. ¶¶ 30-35.  This demonstrates that at least part of the slack-fill in Herbal Zen is non-functional.  That is, it is not necessary as part of the manufacturing or distribution process and serves no purpose other than to deceive consumers about the quantity of food they are purchasing.  At no point in its Memorandum does Defendant actually dispute Plaintiff's allegation that much of the slack-fill in Herbal Zen is non-functional and accordingly unlawful under FDA regulations.  *See* Compl. ¶¶ 22-25 (quoting 21 U.S.C. § 343(d), 21 C.F.R. § 100.100(a), and 58 FR 64123, 64126).

Plaintiff and Class members viewed Defendant's misleading Product packaging, reasonably relied in substantial part on the representation created by its size and were thereby deceived into purchasing the Product for a price they would not otherwise have been willing to pay.  Through these unfair and deceptive practices, Defendant has collected millions of dollars that it would not have otherwise earned. Plaintiff brought this action to stop Defendant's deceptive practices.

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'"  *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).  A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.,* No. 12- 4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010)). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct.

1937 (2009)).  Plaintiffs need only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," *Id*. at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 129 S. Ct. at 1937.  Plaintiffs need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548.

Defendant argues in its brief that the Complaint fails by these standards.  Defendant furthermore argues that Plaintiff lacks standing to seek injunctive relief and that this Court lacks jurisdiction over the claims of out-of-state class members.   However, the clear and unambiguous factual allegations in the Complaint render Plaintiff's claims more than plausible and are patently sufficient to sustain this class action.

## ARGUMENT

I.   **PLAINTIFF'S NATIONWIDE CLASS ACTION CLAIMS ARE VIABLE**

### a.  The Court Has Jurisdiction Over Iovate As To The Claims of Out-of-State Class Members

Citing the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), Defendant argues that the Court lacks personal jurisdiction over the claims of unnamed, out-of-state members of the nationwide class.  Defendant interprets this decision as eliminating a federal court's jurisdiction over nationwide classes wherever the court exercises only specific jurisdiction over the named plaintiff's claims and could not have exercised specific jurisdiction over the claims of unnamed out-of-state class members had they brought their claims their claims in their individual capacity rather than as class members.  In other words, Defendant argues that the fact that these claims form part of a class action is irrelevant to the Court's jurisdictional analysis. *See* Def. Mem., pgs. 4-9.

*Bristol-Myers* never stated so much, however, and personal jurisdiction in class actions has never been understood in this way historically.  *See Beach v. Citigroup Alt. Invs. LLC*, 2014 U.S. Dist. LEXIS 30032, at *16-17 (S.D.N.Y. Mar. 7, 2014) ("In an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action."); *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015) ("However, claims of unnamed class members are irrelevant to the question of specific jurisdiction."); *Famular v. Whirlpool Corp.*, No. 16 CV 944, 2017 U.S. Dist. LEXIS 8265, at *7 (S.D.N.Y. Jan. 19, 2017) (in class actions, "personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action."); *Ambriz v. Coca Cola Co.*, 13-cv-03539, 2014 U.S. Dist. LEXIS 9870, at *18 (N.D. Cal. Jan. 27, 2014) ("Simply put, it is the named plaintiff's claim that 'must arise out of or result from the defendant's forum-related activities,' not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification."); *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 364 (D. Ariz. 2009) ("Objectors argue that this Court lacks jurisdiction to certify a nationwide class. This argument is frivolous. A federal court applying Rule 23 of the Federal Rules of Civil Procedure may certify a nationwide class if the requirements for certification are satisfied.").

The *Bristol-Myers* Court noted that its decision was governed by "settled principles regarding specific jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1781.  And in line with this, many courts have rejected the notion that the decision overturns these longstanding understandings of personal jurisdiction in class actions.  *See Day v. Air Methods Corp.*, 17-cv-183, 2017 U.S. Dist. LEXIS 174693, at *5-6 (E.D. Ky. Oct. 23, 2017) ("AMC contends that this Court does not have personal jurisdiction over it regarding all claims brought in a representative capacity of similarly-situated employees employed by the defendant outside of Kentucky. This argument is misplaced

4

because the inquiry for personal jurisdiction lies with the named parties of the suit asserting their various claims against the defendant, not the unnamed proposed class members."); *Feller v. Transamerica Life Ins. Co.*, 16-cv-01378, 2017 U.S. Dist. LEXIS 206822, at *47-48 (C.D. Cal. Dec. 11, 2017) ("The Supreme Court in <u>BMS</u> applied its reasoning to the narrower grounds of personal jurisdiction in the context of mass tort actions. Its reasoning does not reach so far as to bar the nonresident unnamed class members.").

These decisions have often emphasized that *Bristol-Myers* concerned a *mass* action rather than a *class* action. *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-cv-00564, 2017 U.S. Dist. LEXIS 155654, at *15 (N.D. Cal. Sep. 22, 2017) ("Yet the Supreme Court did not extend its reasoning to bar the nonresident plaintiffs' claims here, and *Bristol-Myers* is meaningfully distinguishable based on that case concerning a mass tort action, in which each plaintiff was a named plaintiff."). Citing Supreme Court precedent, *Fitzhenry-Russell* observed that it did not follow from the fact that unnamed class members are parties to an action for certain purposes that they are parties for every purpose (such as determining jurisdiction). *See Id*.; *Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002) ("Nonnamed class members, however, may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context.").

Another District Court agreed that *Bristol-Myers* "says nothing about federal jurisdiction in class actions." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-2047, 2017 U.S. Dist. LEXIS 197612, at *53 (E.D. La. Nov. 28, 2017). The District Court in *Chinese-Manufactured Drywall* based its decision on the fact that "it is clear and beyond dispute that Congress has constitutional authority to shape federal court's jurisdiction beyond state lines to encompass nonresident parties." *Id.* at *52-53. The suggestion that *Bristol-Myers* bars nationwide class

actions where jurisdiction over a named plaintiff is specific "would require plaintiffs to file fifty separate class actions in fifty or more separate district courts across the United States — in clear violation of congressional efforts at efficiency in the federal courts." *Id.*

Courts have also stressed that *Bristol-Myers* involved an action in *state* court and as such implicated concerns that do not apply when a class action lawsuit is brought in federal court. The decision in *Bristol-Myers* was based largely on the "territorial limitations on the power of the respective states." *Bristol-Myers*, 137 S. Ct. at 1780 (citing *Hanson v. Denckla*, 357 U. S. 235, 251 (1958)). And the decision expressly left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784. Since federal courts are not naturally subject to the "limitations on the power of the [individual] states," the federalism concerns implicated by *Bristol-Myers* do not apply to the instant action. "Federal court jurisdiction is broader based" than state court jurisdiction. *Chinese-Manufactured Drywall*, 2017 U.S. Dist. LEXIS 197612, at *45.

This point was elaborated in significant detail in *Sloan v. GM, LLC*, 16-cv-07244, 2018 U.S. Dist. LEXIS 21176, at *24 (N.D. Cal. Feb. 7, 2018). Rejecting the notion that a "categorical extension" of *Bristol-Myers* to cases in federal court was warranted, the *Sloan* court observed that *Bristol-Myers* was "animated by unique interstate federalism concerns." *Id*. at 24. This was "[t]he focus of the [Supreme] Court's analysis." *Id.* at *26. And the decision's "preface that interstate sovereignty concerns may be 'decisive' even when a defendant faces no burden," provides the "backdrop against which *Bristol-Myers*' import must be understood." *Id.* Seen in this light, the due process right invoked in *Bristol-Myers* does not apply to federal court because "all federal courts, regardless of where they sit, represent the same federal sovereign, not the sovereignty of a foreign state government." *Id.*

6

The due process right invoked in *Bristol-Myers* cannot be extended to the instant action because federal class actions are already governed by their own distinct due process requirements. Rule 23, with is requirements regarding numerosity, commonality, typicality, and adequacy, itself functions to ensure fairness to Defendant.  The Third Circuit Court of Appeals found that federal courts enjoy personal jurisdiction over unnamed plaintiffs in a class action because "the procedural protections of Fed. R. Civ. P. 23 replace the rigid rules of personal jurisdiction in this context and are all that is need to meet the requirements of due process." *In re. Real Estate Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 766 (3d  Cir. 1988).

As the *Chinese-Manufactured Drywall* court observed, the fact that the personal jurisdiction exercised by federal courts is <u>not</u> coextensive that that exercised by state courts, and may rather be expanded through congressional action, is confirmed from multiple directions. Under the MDL statute, for example, "claims that were brought in or removed to federal court [and] involve 'one or more common questions of fact,'" may be transferred "to a single district court for pretrial proceedings, if doing so will serve 'the convenience of parties and witnesses' and 'promote the just and efficient conduct' of the actions to be consolidated. 28 U.S.C. § 1407(a)." *Chinese-Manufactured Drywall Prods.*, 2017 U.S. Dist. LEXIS 197612, at *47-48. Multi-district litigation would more often than not be impossible on Defendant's reading of *Bristol-Myers*.   Likewise, "CAFA illustrates that personal jurisdiction in federal court is permissible even when there are nonresident plaintiffs or class members whose claims arise from conduct outside of the forum state." *Id*. at 48.  Similarly, in enacting Fed. R. Civ. P. 4(k), "Congress has expanded federal courts' jurisdiction beyond 100-miles from the state in which they sit," *Id*. at 47, allowing federal courts a level of personal jurisdiction that could not be exercised

by a state court.  For all these reasons, there is no basis for Defendant's belief that anything in Bristol-Myers precludes the Court's jurisdiction over a nationwide class in the instant action.

### b.  Nationwide Class Allegations Should Not Be Struck Under Rule 12(f)

Defendant argues that Plaintiff's nationwide class allegations should be struck under Rule 12(f) because "the substantive law of each state where the Herbal Zen Product was purchased by each plaintiff would govern claims within that state."  Def. Mem., pg. 16.  However, it does not follow that the Court may not apply the laws of other states to the claims of non-New York plaintiffs in the context of a nationwide class action.  The cases cited by Defendant do not refute this proposition.  For example, *In re Frito-Lay N. Am., Inc.*, 12-MD-2413, 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013) struck the plaintiffs' nationwide class allegations.  But this was only because the plaintiffs' were proposing to apply New York law to the claims of non-New York plaintiffs.  See Id. at *56 ("Plaintiffs bring various claims under New York law on behalf of the plaintiffs who are citizens of Florida and California, and on behalf of putative class members who are not citizens of New York.").  By contrast, Plaintiff Hu proposes that the laws of other states be applied to the claims of non-New York class members to the extent New York law is inapplicable—as Defendant acknowledges.  *See* Def. Mem., pg. 10.  This difference entirely obviates Defendant's analysis.

Whether applying non-New York laws to non-New York plaintiffs is consistent with Rule 23's commonality and predominance requirement presents a complicated factual question that is ordinarily adjudicated on a motion for class certification, not on a motion to dismiss.  In many cases, New York courts have found that the need to apply different state laws to different class members does not constitute an insuperable obstacle to class certification.  *See In re Lilco Sec. Litig.*, 111 F.R.D. 663, 670 (E.D.N.Y. 1986) ("The Court doubts that the differences in the several states' laws of fraud and negligent misrepresentation are so great as to preclude class treatment.");

*Seidman v. Stauffer Chem. Corp.*, Civil No. B-84-543 (TFGD), 1986 U.S. Dist. LEXIS 30264, at

\*36 (D. Conn. Jan. 17, 1986) ("If in fact, this Court were required to apply the law of other states,

it is unclear whether there would exist substantial variations among states with regard to common

law claims of fraud, deceit or negligent misrepresentations.").

## II.   A REASONABLE CONSUMER WOULD BE DECEIVED BY DEFENDANT'S PRODUCT PACKAGING

Defendant argues that "Plaintiff's claims are implausible" because the label of Herbal Zen

clearly states the Product's net weight.  Def. Mem., pg. 12.[1]  However, the FDA has stated that

"label statements cannot correct nonfunctional or misleading fill." *See* Compl. ¶ 37 (quoting 58

Fed. Reg. 64123-01, 64129 (Dec. 6, 1993)). The Complaint also cites a number of other statements

by the FDA and of <u>congressional intent</u> to the effect that accurate net weight/quantity disclosures

on the label of a food product do not absolve a manufacturer of liability for non-functional slack-

fill.  *See* Compl. ¶ 38 (quoting 58 Fed. Reg. 64123, 64131) ("the presence of an accurate net weight

statement does not eliminate the misbranding that occurs when a container is made, formed, or

filled so as to be misleading"); Compl. ¶ 39 (quoting 58 Fed. Reg. 64123, 64128-64129) ("To rule

that an accurate net weight statement protects against misleading fill would render the prohibition

against misleading fill in section 403(d) of the act redundant."); Compl. ¶ 40 (quoting 58 Fed. Reg.

64123, 64131) ("Congress stated (S. Rept. 361, supra at 9) that 'Packages only partly filled create

a false impression as to the quantity of food which they contain despite the declaration of quantity

of contents on the label.'").   Congress has investigated the effect of oversized packaging on

consumer perceptions of product quantity and found that such packaging can mislead even where

quantity is accurately disclosed on the label.  This is not merely a statement of congressional intent,

---

[1] Defendant also claims that the front label of Herbal Zen states the serving size and the number of serving per container.  However, Defendant's own Declaration and Exhibits show otherwise.  The serving size and serving quantity are on the <u>back</u> label (within the nutrition panel), not on the front label.

but an assessment of consumer psychology.  Defendant has not given the Court any reason to second-guess it.

Moreover, these determinations by Congress and the FDA have been incorporated into New York law.  *See Ackerman v. Coca-Cola Co*., No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions"); *Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *11. ("Here [in a slack-fill action brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA")  This incorporation is why *Izquierdo*, addressing a slack-fill claim brought under New York law, found that the defendant "does not cite a single controlling decision of law standing for the proposition that food packaging is incapable of being materially misleading if it displays the net weight and lists the number of pieces inside of the package. This Court is unwilling to manufacture such a precedent here."  *Id.* at *16.  This stands in direct contradiction to Defendant's assertion that "[e]stablished case law holds a deception claim cannot stand where a product is accurately labeled with the quantity of the product." Def. Mem., pg. 13.

Defendant cites *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016), to support its contention that accurate quantity/weight disclosures absolve non-functional slack-fill.  But this case involved claims brought under *California* law and was decided by a court outside of this Circuit.  Defendant emphasizes this decision but simply ignores *Izquierdo*, a decision by a *New York* court applying New York law, which as noted above reached an opposite conclusion.  *See Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *16 ("Those decisions were issued by non-controlling courts and were based, either in whole or in part, on California consumer fraud law. The instant case, however, deals with New York law.").  Indeed, *Izquierdo* unequivocally rejected Defendant's reasoning:

"Federal and state laws provide that food manufacturers are required to label products accurately and package products in a non-misleading way. These obligations are independent of one another." *Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *15-16.

Defendant invokes *Ebner* as a precedent about when slack-fill is deceptive to the reasonable consumer. The truth, however, is that the *Ebner* court declined to recognize the case as about slack-fill in the first place:

> The FAC alleges that "the significant portion of product falling below the mechanical stop device constitutes nonfunctional slack fill." This cannot constitute "slack fill" because under the plain language of the statute, slack fill means the portion of the container without product, i.e., empty space. Thus, the lip product falling below the stop device does not meet the definition of actionable slack fill.

*Ebner*, 838 F.3d at 967

Since *Ebner* was not even about slack-fill, it says nothing about when slack-fill is or is not deceptive to the reasonable consumer. To the extent *Ebner* held that accurate weight disclosures shielded the defendant from liability, this was owing to facts specific to the product at issue, a lip balm whose tube design involved a screw mechanism and some additional weight at the bottom:

> Just as the reasonable consumer understands that additional product may remain in the dispenser tube after the screw mechanism prevents further advancement of the lip bullet, the reasonable consumer also understands that some additional weight at the bottom of the tube — not consisting of product — may be required to keep the tube upright.

*Id*. at 967.

This assessment has no logical bearing on the instant action. Defendant cannot plausibly argue that the reasonable consumer naturally expects to find the amount of slack-fill found in Herbal Zen rather than the smaller amount found in Purely Inspired. For "the amount of slack-fill expected by the reasonable consumer is a debatable factual question that is inappropriate to resolve at the motion to dismiss stage." *Samet v. P&G*, 12-CV-01891, 2013 U.S. Dist. LEXIS 86432 at *32-33 (N.D. Cal. June 18, 2013). Moreover, *Ebner* was not a food case and so did not implicate the F.D.A.'s New York-incorporated food-specific regulations.

Defendant also cites *Fermin v. Pfizer, Inc*., 15-cv-2133, 2016 U.S. Dist. LEXIS 144851

11

(E.D.N.Y. Oct. 14, 2016) as part of the same line of argument.  But just like *Ebner*, this was not a food case subject to the FDA's (and Congress's) determinations about the irrelevance of weight/quantity disclosures under the FDCA (as explained in 58 Fed. Reg. 64123, 64128-29, 64131).  Like *Ebner*, *Fermin* was dismissed by *Izquierdo* as irrelevant.  *See Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *16.

Defendant partially quotes the Complaint's observation that "consumers may have come to expect significant slack-fill in protein powder products."  Def. Mem., pg. 13 (quoting Compl. ¶ 44).  However, Defendant's quotation ignores the broader context of Plaintiff's observation, which is that this general fact offers Defendant no legal protection:  "FDA also notes that, although consumers may become used to the presence of nonfunctional slack-fill in a particular product or product line, the <u>recurrence of slack-fill over an extended period of time does not legitimize such slack-fill if it is nonfunctional</u>."  58 FR 64123, 64131 (emphasis added).  While reasonable consumers may expect some slack-fill in the food products they buy, they do not expect non-functional slack-fill, which is what Plaintiff alleges and what Purely Inspired proves.  Reasonable consumers expect that the size of food packaging will bear a rational relationship to the amount of food inside.  They expect that the bigger the container, the more protein powder will be inside, and vice versa.  That they may also expect the minimum necessary level of functional slack-fill does not eliminate this expectation.

Defendant cites a few cases where courts found that the defendant's disclaimer or disclosure defeated a plaintiff's deceptive conduct claim as a matter of law.  *See* Def. Mem., p. 15.  However, there is a larger body of cases where courts found that the actual real-world impact of disclaimers on consumers is a complicated question of fact that cannot be resolved on a motion to dismiss.  *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395, 2010 U.S. Dist. LEXIS 73156, at *62-63 (E.D.N.Y. July 21, 2010) ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law

extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing."); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 U.S. Dist. LEXIS 126880, at *49 (E.D.N.Y. Sep. 22, 2015) ("the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement"); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 U.S. Dist. LEXIS 135758, at *24 (E.D.N.Y. Sep. 23, 2014) ("[a] solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures") (quoting *F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006)); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013) (a disclaimer stating the product is not intended to treat any disease does not eliminate "the possibility of a reasonable consumer being misled"); *Lonner v. Simon Prop. Grp., Inc.*, 866 N.Y.S.2d 239, 247 (App. Div 2008.) (the complaint stated a cause of action under NY GBL § 349 because "it alleges that the inadequate font size in which the dormancy fee provision was printed, and the defendant's concomitant failure to conspicuously disclose that provision, constituted a deceptive business practice."); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 479 (S.D.N.Y. 2014) (rejecting defendant's argument that "it is unreasonable to assume each Aveeno product contains exclusively natural ingredients when its labeling affirmatively identifies its one or two natural ingredients as well as the synthetic ingredients").

The principle articulated by these and other decisions is particularly applicable to the instant action given that Defendant's weight disclosures actually tell consumers very little about how much food they are receiving.  Defendant argues that "there is no indication that Plaintiff (or the rest of

the putative class) received anything less than 100% of the product that was promised." Def. Mem., pg. 12.  However, this argument presupposes that Plaintiff and the Class were promised a certain weight of food, rather than a certain volume.  And this is a debatable factual assertion that it would be inappropriate to adjudicate on a motion to dismiss.  It may well be the case that the average consumer infers the amount of food they are purchasing from the size of the packaging and that disclosures like "1.5 lbs." have do not have a meaningful impact on these assessments.

This is the more psychologically realistic assumption given how most consumers approach food.  As *United States v. 174 Cases* observed:

> The question was not whether the ordinary purchaser would expect to find a particular number of individual candies in the box but whether such a purchaser would expect to find more of the Delson box filled. For example, the purchaser of a crate of apples opens the crate and finds it half filled. To determine whether he was deceived we do not ask whether he expected to find a particular number of individual apples in the crate. We do ask whether he expected to find more of the crate filled. This is the pertinent question. People do not think in terms of the number of individual mints when buying them in containers.

*United States v. 174 Cases*, 287 F.2d 246, 247-48 (3d Cir. 1961).

The same holds true of weight.  We do not ask whether a reasonable consumer expected to find that a half-filled crate of apples weighed more than it did, but whether he expected it to be more filled with apples.  And likewise with Defendant's product.  Reasonable consumers have no ready way to translate product weight into volume, and product volume is what they ultimately care about. This is why movie goers will order a small popcorn or a large popcorn, not a "featherweight" popcorn or a "heavyweight" popcorn, and why drinks are advertised in fluid ounces rather than regular ounces.

This thoroughly distinguishes the instant action from a case like *Fermin*, which was about *pills*.  Unlike food, pills are not subject to 58 Fed. Reg. 64123, 64128-64129, 64131 and its incorporation into state laws.  Moreover, consumers care about pill count, not pill volume, because count is what determines the amount of active ingredient they will be receiving.  By contrast, they care about food volume, not food count (or weight), because volume is what determines the amount

14

of pleasures they will be receiving.  A disclaimer that consisted in a line drawn across the front of the Product container indicating the fill level of the protein powder inside might indeed apprise reasonable consumers of how much protein powder they are purchasing because it actually speaks to what they care about, volume.  This cannot be said of Defendant's net weight statements, however.  These are not merely Plaintiff's self-serving intuitions, but also the determinations of Congress and the FDA.  In asking the Court to dismiss the Complaint, Defendant is also asking the Court to dismiss these determinations as inconsequential, to announce that reasonable consumers cannot possibly think the way congressional and FDA investigations have concluded is normal.

This is why Plaintiff has adequately pleaded her claims.  Refusing to dismiss plaintiff's slack-fill claims, the court in *Waldman v. New Chapter, Inc.* held:

> Specifically, the Complaint alleges that Berry Green's packaging contained empty space or slack fill. Compl. PP 1, 2, 4, 6, 16, 17. Slack fill is "misleading" if it is: (1) "nonfunctional" (i.e., not for a valid purpose); and (2) the container "does not allow the consumer to fully view its contents." 21 C.F.R. § 100.100(a). Drawing reasonable inferences in Plaintiff's favor, the Complaint pleads both of these prongs. Specifically, the Complaint alleges that Defendant included the slack fill "to mislead the consumer," and that the packaging "is geared to making the customer believe that he/she is buying more of the product." Compl. PP 17, 19. Misleading consumers is not a valid reason to package a product with slack fill. See 21 C.F.R. § 100.100(a)(1-6). And, unquestionably, Berry Green's packaging "does not allow the consumer to fully view its contents." Pl. Ex. 2. It follows then that Plaintiff has pled misleading representations sufficient to state an unjust enrichment claim predicated on a slack fill theory.

*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404-05 (E.D.N.Y. 2010).

*Waldman* was explaining the law with reference to the plaintiff's unjust enrichment claims.  But its analysis is equally applicable to Plaintiff's fraud claims.  The Amended Complaint is at least as well pleaded as the complaint in *Waldman*.

Finally, it must again be emphasized that Defendant has said nothing that calls into question Plaintiff's allegation that the slack-fill in Herbal Zen is non-functional.  As the Complaint explains, this is proven by a comparison with Defendant's Purely Inspired product. See Compl. ¶¶ 29-35. Defendant's own exhibit demonstrates that the protein powder in Herbal Zen and Purely Inspired are chemically identical.  They have the same nutritional values and the same ingredients.  *See* Decl.

of Claudia M. Vetesi, **Exhibit A**.  The Complaint both alleges and demonstrates visually that the two containers are identical, *see* Compl. ¶¶ 30-31, and Defendant nowhere disputes this allegation. Since Purely Inspired contains an additional 0.5 lbs. protein powder (2.0 lbs. and opposed to Herbal Zen's 1.5 lbs.), it follows that the empty space corresponding to 0.5 lbs. of protein power in Herbal Zen (approximately 1 inch of vertical space) is non-functional.  The Purely Inspired product did not require this extra space.  And since all the other variables (like container size and the chemical make-up of the powder) have been controlled for, it follows that Herbal Zen did not require the extra space either.  *See* Complaint ¶¶ 33-35.

Defendant's absurd response to these indisputable facts is to argue that "the Herbal Zen and Purely Inspired Products are wholly distinct: they are different products and disclose different net weights and numbers of servings per container."  Def. Mem., pgs. 13-14.  Defendant characterizes Herbal Zen and Purely Inspired as "wholly distinct."  But the only difference it can cite is the difference in the quantity of protein powder contained therein.  That is, the only difference Defendant cites is the difference that proves Plaintiff's allegation that the slack-fill in Herbal Zen is non-functional.  Defendant pretends it is rebutting Plaintiff's allegation when it is merely confirming it.   New York courts have recognized that a plaintiff plausibly alleges the presence of non-functional slack-fill under  NY GBL § 349 or NY GBL § 350 when "comparisons to similar products can be made." *Bautista v. Cytosport, Inc.*, No. 15-CV-9081 (CS), 2016 U.S. Dist. LEXIS 171468, at *13 (S.D.N.Y. Dec. 12, 2016).  In the instant action, the products are being compared by Plaintiff are not only similar but <u>identical</u> with respect to everything besides their slack-fill— which is precisely Plaintiff's point.

## III.   PLAINTIFF WAS INJURED BY DEFENDANT'S CONDUCT

Defendant's argument that Plaintiff seeks "to recover based on deception alone," Def. Mem., pg. 16, betrays a fundamental misunderstanding of *Small v. Lorillard Tobacco Co*., 94

16

N.Y.2d 43 (1999), which simply held that deception <u>alone</u> does not constitute an injury.  There, plaintiffs alleged that "defendants used deceptive commercial practices to sell their cigarettes to New Yorkers and that they would not have bought these cigarettes had they known that nicotine is an addictive drug." *Id.* at 51.  However, the only injury alleged was "that defendants' deception prevented them from making free and informed choices as consumers."  *Id*. at 56.  This is manifestly not Plaintiff's argument in the instant action.  Her injury was <u>not</u> that Defendant prevented her from making the free and informed choice of whether to purchase the Herbal Zen, but that the actual value of his purchase was <u>less</u> than the value warranted by the packaging's implicit representation of quantity.  Plaintiff therefore received less than she had bargained for.  This was why she was financially injured.  The injury was not to her free will, but to her pocketbook.

Defendant takes the language of *Small* wholly out of context when it characterizes that court as rejecting the idea "that consumers who buy a product that they would not have purchased absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349."  Def. Mem., pg. 15 (quoting *Small*, 94 N.Y.2d at 56).  But in alleging that she "would not have paid this sum [$19.97] had she known that the container was only a little more than half full," Compl. ¶ 19, Plaintiff has merely pleaded reliance.  By Defendant's bizarre logic, any plaintiff who pleads reliance *ipso facto* fails to plead injury.  This is plainly nonsensical.  Small stands for the proposition that a plaintiff who <u>only</u> pleads reliance without addressing the nature of her injury does not have a cognizable claim under NY GBL §§ 349, NY GBL § 350.  But this is manifestly not the case with Plaintiff, who pleads that she "was financially injured as a result of Defendant's deceptive conduct as alleged herein because she did not receive the quantity that she paid for and was promised."  Compl. ¶ 18.

Defendant's misinterpretation of *Small* stands in direct contradiction to a significant body of case law, which does not penalize plaintiff's for the mere act of pleading reliance. *See Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.' (Compl. ¶ 9.) Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Rodriguez v. It's Just Lunch, Int'l*, 2010 U.S. Dist. LEXIS 16622, 2010 WL 685009,  at *9 (S.D.N.Y. Feb. 23, 2010) ("[C]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have not suffered an injury cognizable under NYGBL § 349," but allegations that the plaintiff paid a price premium based upon deceptive practices are sufficient to state an injury); *Singleton v. Fifth Generation, Inc.*, 2016 U.S. Dist. LEXIS 14000, 2016 WL 406295, at *10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under § 349 where he alleged that, had he "known 'the truth," he "would not have bought the vodka, or would have paid less for it.").

New York courts have rejected the "deception as injury theory" because "deceived consumers may nevertheless receive - and retain the benefits of - something of value, even if it is not precisely what they believed they were buying." *Dash v. Seagate Tech. (US) Holdings, Inc.*, 27 F. Supp. 3d 357, 361-62 (E.D.N.Y. 2014) (quoting *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012)).   But in no way does Plaintiff deny that she received "something of value" from Defendant.  She merely alleges that this "something of value" was at most 79% of what was promised to her.  The Herbal Zen container was only 59% filled with protein.  But the (identical) Purely Inspired container was 74% filled with an (identical) protein powder.  This proves that Plaintiff reasonably expected the Herbal Zen container to be filled at

least that high—because Plaintiff reasonably expected Herbal Zen to be functionally full. Reasonable consumers reasonably expect the food contained in a container will reflect the size of the container and that any discrepancy between the two will be functionally necessary.  But Purely Inspired proves that much of the slack-fill in Herbal Zen is not functionally necessary.  Therefore, Plaintiff received at most 79% of what she bargained for, *see* Compl. ¶¶ 30-32, which is why she quantifies her injury as $4.04, or 21% of the purchase price.  Plaintiff's ability to quantify her injury as something other than the full purchase price proves that she is not pleading "deception as injury."

Defendant relies on *Izquierdo* for its argument that Plaintiff has merely pleaded "deception as injury." *Izquierdo* observed that while the Plaintiffs had "recite[d] the word 'premium' multiple times in their Complaint," *Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *18, this did not plausibly allege the existence of an injury because the plaintiff failed to establish that the defendant's alleged deception was what enabled it to charge a higher price than would otherwise have been possible. The court held that the plaintiff's price comparisons were with products that were too dissimilar to be revealing, *see Id*. at 18, and that the plaintiff had furthermore failed to plausibly allege that it was the manufacturer rather than the retailer who set the price of the product—and was therefore responsible for the "price premium." *See Id*. at 19.

All this is entirely irrelevant to the instant action, however, because Plaintiffs does allege a price premium theory of injury, and instead advances a benefit of the bargain theory.  *Izquierdo* was about what is required to adequately plead a price premium.  But nowhere does the decision state that the price premium theory is the *only* cognizable theory of injury under New York law—as Defendant interprets it.  Indeed, this notion has been expressly rejected by the Second Circuit: "Defendant argues that New York courts have recognized the payment of a plaintiff's purchase

19

price as a Section 349 injury only when the plaintiff paid a 'price premium.' But there is no such rigid 'price premium' doctrine under New York law." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015).  That the "price premium" is *merely one* theory of injury in New York was also acknowledged in *Gurevich v. TJX Cos.*, 2016 U.S. Dist. LEXIS 131562 (S.D.N.Y. Sep. 26, 2016): "[A]n actual injury claim under §§ 349 and 350 typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.' This *may* be in the form of an overpayment or 'price premium,' whereby a plaintiff pays more than she would have but for the deceptive practice."  *Id.* at *31-32 (quoting *Orlander*, 802 F.3d at 302 (emphasis added).

The legal validity of the benefit of the bargain theory is confirmed by *Lazaroff v. Paraco Gas Corp.*, 967 N.Y.S.2d 867 (Sup. Ct.), cited in Am. Compl. ¶ 32, which expressly acknowledges benefit of the bargain as a cognizable theory of injury: "Plaintiff alleges that, had she understood the true amount of the product, she would not have purchased it, and that she and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of her bargain, i.e., a full 20 pound cylinder and the amount of propane she was promised. Thus, plaintiff has properly alleged injury."  *Id.* at 867 (quotations and citations omitted).

Unlike *Izquierdo, Lazaroff* did not require the plaintiff to plead that that the propane cylinders at issue were more expensive than other comparable propane cylinders on the market. Defendant charges that Plaintiff "has not shown that she paid a higher price for the Herbal Zen Product than she would have if its container were smaller."  Def. Mem., pg. 16.  But *Lazaroff* also did not require the plaintiff to show that he would have paid have paid less had the propane containers he purchased been smaller—i.e., proportioned to the quantity of propane actually

contained inside.

The reason is that the court was evaluating the plaintiff's injury allegations under the benefit of the bargain theory.  The plaintiff was promised a full cylinder of propane but received something less, so he was entitled to the difference between the value of the product as it was warranted by the defendant and the value of the product as it was actually delivered to him.  This discrepancy was utterly unaffected by the prices of other propane cylinders on the market, which is why the plaintiff was not required to address them.  There is no daylight between *Lazaroff* and the instant action.  Just as Lazaroff failed to receive the full amount of propane he was promised, so Plaintiff here failed to receive the full amount of protein powder she was promised.

Defendant is simply begging the question when it argues that Plaintiff "got exactly what she paid for—1.5 lbs., 680 grams, and approximately 21 servings of protein powder," Def. Mem., pg. 15, since this assumes that Plaintiff was bargaining for a certain weight of candy when she alleges that she was bargaining for a certain volume of candy.  As argued above, the latter is the more psychologically plausible assumption, given that human beings ordinarily quantify food in terms of volume rather than weight.  At any rate, this presents a factual question that cannot be adjudicated on a motion to dismiss.

To plead injury under NY GBL §§ 349, 350, a plaintiff "must show that it suffered injury as a result of the defendant's deceptive and misleading business conduct." *Porwick v. Fortis Benefits Ins. Co.*, 99 CV10122, 2004 U.S. Dist. LEXIS 24432, at *9 (S.D.N.Y. Dec. 3, 2004).  And Plaintiff has shown precisely this.   It was Defendant who caused the non-functional slack-fill in the Product, and it was the non-functional slack-fill that caused the discrepancy between what Plaintiff was promised and what she actually received—i.e., Plaintiff's injury.  Plaintiff's injury was therefore the result of Defendant's deceptive conduct.  That this is adequate to plead injury

was confirmed by New York's highest court:

> [T]here is a difference between reliance and causation, as illustrated by the facts of this case. Here, plaintiffs allege that because of defendant's deceptive act, they were forced to pay a $ 275 fee that they had been led to believe was not required. In other words, plaintiffs allege that defendant's material deception caused them to suffer a $ 275 loss. This allegation satisfies the causation requirement. Plaintiffs need not additionally allege that they would not otherwise have entered into the transaction. Nothing more is required.

*Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30 (2000).

"Nothing more is required" in the instant action either.  The *Stutman* plaintiffs were <u>not</u> required to show that the bank would only have charged them, say, $100, rather than $275, had it been upfront about the existence of a fee.  For all we know, the bank might still have charged $275 and the plaintiffs might have agreed to pay it.  This is because the *Stutman* plaintiffs were deprived of the benefit of their bargains.  They bargained for banking services that did not involve a $275 fee but received banking services that did involve a $275 fee.  Their injury was simply the difference in value between what was promised to them and what was actually delivered—$275.  Plaintiff's injury also consists in the difference between what was promised and what was delivered.

Even if we conceptualize injury in terms of a "price premium," or inflated price—rather than as Defendant's failure to deliver to Plaintiff the benefit of her bargain—Defendant caused this inflation through the mere act of packaging the Product with non-functional slack-fill, as this increased the price Plaintiff paid for a given volume of protein powder over the price she believed she was paying and agreed to pay.  As noted above, *Lazaroff* held that the Plaintiff had adequately alleged "that he and the purported members of the class <u>paid a higher price per gallon/pound of propane</u>."  *Lazaroff*, 967 N.Y.S.2d at 867 (emphasis added).  Given that the deceptive practice concerned the <u>quantity</u> of product, the *Lazaroff* court did not require the plaintiff to compare the price charged with what the price charged would have been under some counterfactual scenario where there was no deception.  It sufficed that the defendant provided the plaintiff with less product than plaintiff reasonably believed he was purchasing.

## IV.   PLAINTIFF HAS ADEQUATELY PLEADED COMMON LAW FRAUD

Defendant argues that Plaintiff's common law fraud claim should be dismissed on four grounds: (1) Plaintiff has not pleaded a misrepresentation of a material fact, (2) Plaintiff has not pleaded fraudulent intent, (3) Plaintiff fails to plead justifiable reliance, and (4) Plaintiff fails to plead injury.  Def. Mem., pgs. 17-20.  Arguments (1) and (4) have already been disposed of above, in Sections II and III.  Accordingly, Plaintiff here addresses only arguments (2) and (3).

Defendant charges that Plaintiff fails to plead facts "that give rise to a strong inference of fraudulent intent." Def. Mem., pg. 18 (*quoting Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted)).  But multiple such facts are apparent.  A strong inference of fraud "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  And both these conditions are satisfied in the instant action.

Defendant had a motive to commit fraud because packaging Herbal Zen with only 1.5 lbs. of protein power rather than filling the container to its functional capacity of at least 2.0 lbs. significantly increases Defendant's profit margin.  Consumers are paying the same price, but for 25% less protein powder, which naturally reduces Defendant's production costs.  Hence its motive. Defendant also had the opportunity to commit fraud because it knew that consumers would be unable to open the non-transparent containers in the store and see for themselves how much protein powder they were actually receiving or not receiving.

Moreover, a strong inference of fraud is supported by "strong circumstantial evidence of conscious misbehavior or recklessness."  As is proven by the Purely Inspired container, Defendant most certainly knew that there were no functional obstacles to filling Herbal Zen with at least another 0.5 lbs. of protein powder.  It is furthermore plausible that Defendant retains legal counsel

that either did, or should have, apprised it that such non-functional slack-fill is deceptive and misleading under FDA regulations. *See* 21 C.F.R. § 100.100(a) ("A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill.")  Thus, Defendant either knew or recklessly disregarded that its packaging was likely to mislead consumers.

Defendant also argues that Plaintiff fails to plead justifiable reliance on the size of the Herbal Zen packaging given the labels' net weight disclosures.  "Justifiable reliance does not exist where a party has the means to discover a falsehood by the exercise of ordinary intelligence, and fails to make use of those means," *Abele Tractor & Equip. Co., Inc. v. Balfour*, 20 N.Y.S.3d 697, 701 (App. Div.2015) (citation omitted).  However, the Complaint explains just why "ordinary intelligence" would lead consumers to rely on Defendant's misrepresentations.  As detailed in the Complaint, Congress and the FDA have both investigated just how "ordinary intelligence" responds to package size.  For example:

> Consumers develop expectations as to the amount of product they are purchasing based, at least in part, on the size of the container. The congressional report that accompanied the FPLA stated: "Packages have replaced the salesman. Therefore, it is urgently required that the information set forth on these packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products" (H.R. 2076, 89th Cong., 2d sess., p. 7 (September 23, 1966)). Thus, packaging becomes the "final salesman" between the manufacturer and the consumer, communicating information about the quantity and quality of product in a container. Further, Congress stated (S. Rept. 361, supra at 9) that "Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label."

58 Fed. Reg. 64123, 64131 (emphasis added)

Nowhere does Defendant explain just why its untutored, self-serving intuitions about how ordinary consumers *should* responded to oversized packaging trump these empirical investigations of how they *actually do* respond to it.  As articulated above in *United States v. 174 Cases*, it is a psychological fact that people conceptualize food quantity in terms of volume rather than weight. While a food chemistry expert might have the wherewithal to use net weight disclosures in

24

combination with ingredients disclosures to deduce the true volume of food she is receiving—and thus correct any misimpression created by the size of food packaging—this plainly lies beyond the purview of "ordinary intelligence."  If Defendant disagrees with this, then it is welcome to introduce the opposing opinions of its consumer behavior experts at trial.  But it cannot ask that the issue be resolved in its favor on a motion to dismiss.  *See MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 608 (Sup. Ct. 2010) ("Reasonable reliance is a fact-intensive inquiry, which should be reserved for a trier of fact."); *Abele Tractor*, 20 N.Y.S.3d at 700 ("[w]hether plaintiff exercised reasonable diligence in discovering defendant's fraud must be resolved by the trier of fact.").

## SUMMARY AND CONCLUSION

All of Defendant's arguments are baseless.  Their weaknesses include (1) Defendant's tendentious reading of *Bristol-Myers* (Sec. I), (2) attempting to adjudicate patently factual questions about how consumers evaluate food quantity (whether through weight or volume) on a motion to dismiss (Sec. II), (3) failing to demonstrate that Plaintiff's benefit of the bargain theory of injury is in any way inconsistent with New York law (Sec. III), and (4) ignoring the circumstances, motivations, and opportunities that give rise to a strong inference of fraudulent intent (Sec. IV). Given the failure of Defendant's arguments on these and other fronts, Plaintiffs respectfully ask the Court to deny Defendant's motion to dismiss.

Dated: April 27, 2017

Respectfully submitted,


*/s/ C.K. Lee*
By:  C.K. Lee, Esq.


**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2018, true and correct copies of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Class Action Complaint were served on all counsel of record via ECF.

*/s/ C.K. Lee*
C.K. Lee, Esq.