**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MIAO XIN HU, *on behalf of herself and all others similarly situated*,

                Plaintiff,

    v.

IOVATE HEALTH SCIENCES U.S.A. INC.,

                Defendant.

No. 17-cv-9427-ER

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT IOVATE HEALTH SCIENCES U.S.A. INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MORRISON & FOERSTER LLP

Joel C. Haims
Rhiannon N. Batchelder
250 West 55th Street
New York, NY 10019
(212) 468-8000
JHaims@mofo.com
RBatchelder@mofo.com

Claudia M. Vetesi, *pro hac vice*
425 Market Street
San Francisco, CA 94105
(415) 268-7000
CVetesi@mofo.com

*Attorneys for Defendant Iovate Health Sciences U.S.A. Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.................................. 2

LEGAL STANDARD .......................................................................................... 3

ARGUMENT ...................................................................................................... 4

I.    PLAINTIFF'S LOCAL RULE 56.1 STATEMENT FAILS TO CITE TO ADMISSIBLE EVIDENCE IN THE RECORD ................................. 4

II.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT IS PROCEDURALLY DEFICIENT ................................................ 5

III.  PLAINTIFF'S SUMMARY JUDGMENT MOTION IMPROPERLY PRECEDES CLASS CERTIFICATION .......................................... 7

IV.   PLAINTIFF HAS FAILED TO SHOW THAT SHE IS ENTITLED TO SUMMARY JUDGMENT .......................................................... 8

    A.   Plaintiff Has No Evidence to Support Her Claims under GBL §§ 349 and 350.......................................................................... 8

        1.   Plaintiff Has No Evidence that the Herbal Zen Packaging Is Likely to Mislead a Reasonable Consumer or is Material .................. 9

        2.   There is Genuine Dispute of Material Fact as to Whether the Herbal Zen Product Contains Any Nonfunctional Slack-Fill, Much Less 0.5 lbs or 1 inch of the Product's Vertical Capacity...................... 13

        3.   Plaintiff Has No Evidence that She Was Injured or Is Entitled to Monetary Relief, Individually or Classwide........................... 16

    B.   Plaintiff Fails to Prove That She Is Entitled to Summary Judgment on Her Common-Law Fraud Claim ........................................ 18

        1.   Plaintiff Has Not Shown Any Misrepresentation of a Material Fact....... 18

        2.   Plaintiff Has Not Established Fraudulent Intent ................................. 19

        3.   Plaintiff Has Not Shown Justifiable Reliance on the Size of the Herbal Zen Product's Container Despite the Label's Accurate Net Weight.......................................................... 20

        4.   Plaintiff Cannot Establish Injury .......................................... 21

V.    PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF ..................... 21

    A.   Plaintiff Lacks Standing to Seek Injunctive Relief Because She Is Already Aware of How Much Protein Powder Is Contained in the Herbal Zen Product .......................................................... 22

    B.   Plaintiff Lacks Standing to Seek Injunctive Relief Because the Herbal Zen Product Is No Longer Sold ............................................. 23

## TABLE OF CONTENTS
(continued)

**Page**

CONCLUSION ..................................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
    888 F. Supp. 2d 478 (S.D.N.Y. 2012), *aff'd sub nom., Pa. Pub. Sch. Emps.*
    *Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014)......................................18, 20

*Alce v. Wise Foods, Inc.*,
    No. 17-cv-2402 (NRB), 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018)........................ passim

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).........................................................................................................4

*Anwar v. Fairfield Greenwich Ltd.*,
    306 F.R.D. 134 (S.D.N.Y. 2015)....................................................................................21

*AUSA Life Ins. Co. v. Ernst & Young*,
    206 F.3d 202 (2d Cir. 2000), *aff'd*, 39 Fed. Appx. 667 (2d Cir. 2002)................................18

*Buonasera v. Honest Co.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016)...............................................................................23

*City of N.Y. v. Smokes–Spirits.Com, Inc.*,
    911 N.E.2d 834 (N.Y. 2009)............................................................................................8

*Clark v. Jewish Childcare Ass'n*,
    96 F. Supp. 3d 237 (S.D.N.Y. 2015)..................................................................................3

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013).........................................................................................................18

*Cuzco v. Orion Builders, Inc.*,
    262 F.R.D. 325 (S.D.N.Y. 2009)......................................................................................8

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018).............................................................11, 12, 13, 21

*Ebin v. Kangadis Food Inc.*,
    No. 13 CIV. 2311 (JSR), 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014)..................................18

*Fermin v. Pfizer Inc.*,
    215 F. Supp. 3d 209 (E.D.N.Y. 2016)................................................................................9

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
    80 F. Supp. 3d 535 (S.D.N.Y. 2015)..................................................................................7

*Frederick v. Capital One Bank (USA), N.A.*,
No. 14-CV-5460 AJN, 2015 WL 5521769 (S.D.N.Y. Sept. 17, 2015) ....................................9

*Gaidon v. Guardian Life Ins. Co. of Am.*,
725 N.E.2d 598 (N.Y. 1999) ..........................................................................................18

*Giannullo v. City of New York*,
322 F.3d 139 (2d Cir. 2003) ...........................................................................................20

*Guardian Music Corp. v. James W. Guercio Enters.*,
459 F. Supp. 2d 216 (S.D.N.Y. 2006), *aff'd*, 271 Fed. Appx. 119 (2d Cir.
2008) ...............................................................................................................................4

*Hazelhurst v. Brita Prods. Co.*,
744 N.Y.S.2d 31 (N.Y. App. Div. 2002) ......................................................................21

*Herzfeld v. JPMorgan Chase Bank, N.A.*,
354 Fed. Appx. 488 (2d Cir. 2009) ...............................................................................19

*Indus. Quick Search, Inc. v. Miller, Rosado & Algois, LLP*,
No. 13 CIV. 5589 (ER), 2018 WL 264111 (S.D.N.Y. Jan. 2, 2018) ..............................5

*Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM),
2016 U.S. Dist. LEXIS 149795 (S.D.N.Y. Oct. 26, 2016) ...............................17, 23

*Kommer v. Bayer Consumer Health*,
252 F. Supp. 3d 304 (S.D.N.Y. 2017), *aff'd*, 710 Fed. Appx. 43 (2d Cir. 2018)...................22

*Martinez v. Hilton Hotels Corp.*,
930 F. Supp. 2d 508 (S.D.N.Y. 2013)..........................................................................4, 5

*Melini v. 71st Lexington Corp.*,
No. 07 CIV. 701 (JCF), 2009 WL 413608 (S.D.N.Y. Feb. 13, 2009) ...........................4, 6

*Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of N.Y.*,
No. 06-CV-1164, 2010 WL 3907489 (TJM/DEP) (N.D.N.Y. Sept. 30, 2010) .......................6

*New World Sols., Inc. v. NameMedia Inc.*,
150 F. Supp. 3d 287 (S.D.N.Y. 2015).............................................................................8

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)......................................................................................22, 23

*Nicosia v. Amazon.com, Inc.*,
84 F. Supp. 3d 142 (E.D.N.Y. 2015), *rev'd in part on other grounds*, 834 F.3d
220...................................................................................................................................24

*Pasternack v. Lab. Corp. of Am.*,
    No. 10 CIV. 4426 (PGG), 2011 WL 3478732 (S.D.N.Y. Aug. 1, 2011) ...............................19

*Pelman v. McDonald's Corp.*,
    272 F.R.D. 82 (S.D.N.Y. 2010) .......................................................................................10

*Philip Morris Cos. v. Nat'l Asbestos Workers Med. Fund (In re Philip Morris Inc.)*,
    214 F.3d 132 (2d Cir. 2000)..............................................................................................7

*Prudential Ins. & Annuity Co. v. State St. Bank & Tr. Co. (In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.)*,
    772 F. Supp. 2d 519 (S.D.N.Y. 2011).................................................................................6

*Ritchie v. N. Leasing Sys., Inc.*,
    No. 12-CV-4992 (KBF), 2016 WL 1241531 (S.D.N.Y. Mar. 28, 2016), *aff'd sub nom., Ritchie v. Taylor*, 701 Fed. Appx. 45 (2d Cir. 2017)...............................19

*Rouse v. Elliot Stevens, Ltd.*,
    No. 13-CV-01443 (SN), 2016 WL 6520065 (S.D.N.Y. Nov. 3, 2016) ...................................19

*Schwartz v. Novo Industri A/S*,
    119 F.R.D. 359 (S.D.N.Y. 1988) .......................................................................................19

*In re Scotts EZ Seed Litig.*,
    No. 12 CV 4727 (VB), 2017 U.S. Dist. LEXIS 125621 (S.D.N.Y. Aug. 7, 2017) ......................................................................................................................18

*S.E.C. v. Thrasher*,
    152 F. Supp. 2d 291 (S.D.N.Y. 2001).........................................................................5, 6, 7

*Segovia v. Vitamin Shoppe, Inc.*,
    No. 14-CV-7061 (NSR), 2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017)...............................17

*Signature Apparel Grp. LLC v. Laurita (In re Signature Apparel Grp. LLC)*,
    577 B.R. 54 (Bankr. S.D.N.Y. 2017) ................................................................................19

*Stewart v. Riviana Foods Inc.*,
    No. 16-CV-6157 (NSR), 2017 U.S. Dist. LEXIS 146665 (S.D.N.Y. Sept. 11, 2017) ...................................................................................................................9, 10

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
    646 F. Supp. 2d 510 (S.D.N.Y. 2009)...........................................................................11, 12

*United States v. Prevezon Holdings, Ltd.*,
    251 F. Supp. 3d 684 (S.D.N.Y. 2017)...................................................................................3

*Vaccariello v. XM Satellite Radio, Inc.*,
   295 F.R.D. 62 (S.D.N.Y. 2013) ...................................................................22

*Wash. Capital Ventures, LLC v. Dynamicsoft, Inc.*,
   373 F. Supp. 2d 360 (S.D.N.Y. 2005)..........................................................20

*Weinstein v. eBay, Inc.*,
   819 F. Supp. 2d 219 (S.D.N.Y. 2011)..........................................................11

*Wurtzburger v. Ky. Fried Chicken*,
   No. 16-cv-08186 (NSR), 2017 U.S. Dist. LEXIS 205881 (S.D.N.Y. Dec. 13,
   2017) ...............................................................................................................8

**Statutes**

21 C.F.R. § 100.100(a)....................................................................................14

21 C.F.R. § 100.100(a)(4)...............................................................................15

**Other Authorities**

Local Rule 56.1(a) .............................................................................................4

Local Rule 56.1(d) .............................................................................................5

U.S. Cost. Art. III, § 2.....................................................................................21

## INTRODUCTION

After allegedly purchasing a container of Iovate's 1.5 lbs. Herbal Zen Nutrition™ plant-based protein powder (the "Herbal Zen Product") for $19.97, Plaintiff was shocked to realize that the container was not filled to the brim.  Plaintiff is so certain that the space at the top of the Herbal Zen Product is nonfunctional slack-fill—and that there is no other plausible explanation for the product's headspace—that she has moved for summary judgment on this fact without the benefit of any discovery, or even a determination by this Court that she has properly stated a claim upon which relief can be granted.  She is wrong in all respects.  The Court should deny Plaintiff's summary judgment motion for several reasons.

*First*, Plaintiff's motion must be denied because summary judgment solely as to non-determinative factual issues is inappropriate.  Here, Plaintiff seeks summary judgment on the question of whether the Herbal Zen Product contains a minimum amount of nonfunctional slack-fill.  Resolving that question now is not dispositive of any claim, or even any element of any claim.

*Second*, Plaintiff's motion is premature because no class has been certified in this action. New York courts have made clear that a determination on the merits should not precede class certification.

*Third*, Plaintiff has no evidence supporting her claims under GBL §§ 349 and 350. Specifically, she has failed to prove that the Herbal Zen Product is materially misleading to a reasonable consumer or that anyone was injured by the product.  She also fails to prove that the slack-fill in the Herbal Zen Product is nonfunctional.  Nor can she—Iovate has legitimate reasons for including headspace in this product.

*Fourth*, Plaintiff fails to prove her claim for common-law fraud.  As with the GBL §§ 349

and 350 claims, there is no evidence of a material misrepresentation or injury.  Moreover,

Plaintiff has not met her burden of establishing fraudulent intent or justifiable reliance on an

individual or classwide basis.  In fact, the record is devoid of any evidence showing that Iovate

acted with fraudulent intent or that relying solely on the size of the Herbal Zen container despite

the clear disclosure of net weight is justified.

*Fifth*, Plaintiff has not established that she is entitled to injunctive relief because she is

now aware that this product contains slack-fill and, in any event, the product is no longer on the

market.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Miao Xin Hu brings a nationwide class action[1] based on the allegation that

Iovate's 1.5 lbs. container of the Herbal Zen Product contains nonfunctional slack-fill within the

meaning of the Federal Food Drug & Cosmetic Act ("FDCA"), Section 403(d) (21 U.S.C.

§ 343(d)), as implemented through 21 C.F.R. § 100.100.  Complaint ("Compl.") ¶¶ 1, 3-4, 52.

She alleges that she purchased one container of the Herbal Zen Product for $19.97[2] on May 10,

2017, at a GNC retail store in New York.  *Id.* ¶ 18.  Despite that the Herbal Zen Product's label

clearly indicates the amount of protein powder contained therein,[3] Plaintiff alleges that she

believed she was purchasing more protein powder than she received due to the size of the Herbal

Zen Product's container.  *See generally* Compl.  On this basis, Plaintiff asserted four claims on

behalf of herself and all other purchasers of the product nationwide:  (i) a request for injunctive

relief under GBL § 349, (ii) damages under GBL § 349, (iii) various forms of relief under GBL

---

[1] Plaintiff alternatively seeks to certify a New York class.

[2] Emphasis on "alleges" because Plaintiff's slapdash summary judgment motion does not even include competent evidence establishing that she purchased the product.

[3] *See* Exhibit A to Declaration of Claudia M. Vetesi, Docket No. 23 ("Ex. A"), filed with Def.'s Mot. to Dismiss.

2

§ 350, and (iv) common-law fraud.  *See* Compl. pp. 22-28.

On March 27, 2018, Defendant moved to dismiss Plaintiff's Complaint for failure to state a claim under GBL §§ 349 and 350 and for common-law fraud, lack of personal jurisdiction, and lack of Article III standing.  *See generally* Defendant's Memorandum of Law in Support of its Motion to Dismiss, Docket No. 20 ("Def.'s Mot. to Dismiss").  Defendant argued that there was no personal jurisdiction over the out-of-state plaintiffs' claims.  *Id*. at 4-9.  Moreover, Plaintiff had failed to plausibly allege that the Herbal Zen Product was likely to materially mislead consumers or had injured consumers.  *Id*. at 11-16.  Plaintiff's allegations also did not show fraudulent intent or justifiable reliance, or that she had standing to seek injunctive relief.  *Id*. at 17-23.

Plaintiff cross-moved for partial summary judgment solely on the fact that "<u>at a minimum</u>, Herbal Zen contains non-functional slack-fill in the amount corresponding to the volume occupied by 0.5 lbs of protein powder or, in the alternative, in the amount corresponding to 1 inch of the Herbal Zen container's vertical capacity."  *See* Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment at 3, Docket No. 17 ("Pltf.'s Mot. for S.J.").  She bases this conclusion solely on comparisons to another of Iovate's products, the Purely Inspired™ plant-based protein powder (the "Purely Inspired Product").  *Id.*

## LEGAL STANDARD

To obtain a grant of summary judgment under Federal Rule of Civil Procedure 56(a), "[t]he moving party bears 'the initial burden of establishing the absence of any genuine issue of material fact.'"  *United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684, 688 (S.D.N.Y. 2017) (citation omitted).  "On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law."  *Clark v. Jewish Childcare Ass'n*, 96 F.

Supp. 3d 237, 247-48 (S.D.N.Y. 2015) (citation omitted).  In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.  *Guardian Music Corp. v. James W. Guercio Enters.*, 459 F. Supp. 2d 216, 220-21 (S.D.N.Y. 2006), *aff'd*, 271 Fed. Appx. 119 (2d Cir. 2008).

"If the moving party will bear the burden of persuasion at trial, the burden at summary judgment is higher—the moving party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial.  Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Id.* at 221 (citation omitted).  The standard for a directed verdict is whether "under the governing law, there can be but one reasonable conclusion as to the verdict."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Rule 56 "'authorizes partial summary judgment that falls short of a final determination'" (*Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 518 (S.D.N.Y. 2013) (citation omitted)) but "partial summary judgment motions that fail to fully resolve [an] issue for any given cause of action are disfavored."  *Melini v. 71st Lexington Corp.*, No. 07 CIV. 701 (JCF), 2009 WL 413608, at *8 (S.D.N.Y. Feb. 13, 2009).

## ARGUMENT

### I.   PLAINTIFF'S LOCAL RULE 56.1 STATEMENT FAILS TO CITE TO ADMISSIBLE EVIDENCE IN THE RECORD.

Local Rule 56.1(a) requires the moving party to provide "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  S.D.N.Y.L.R. 56.1(a).  Pursuant to Local Rule 56.1(d), "[e]ach statement by the movant . . . pursuant to Rule 56.1(a) . . . must be followed by citation to

evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  *Id*. at

56.1(d).  Yet Plaintiff's Local Rule 56.1(a) statement fails to cite to a single piece of evidence in

the summary judgment record.  *See, e.g.*, Pltf.'s L.R. 56.1 ¶ 4 (claiming that all flavors of the

Herbal Zen Product are chemically identical to the corresponding flavors of the Purely Inspired

Product, without citation to any evidence in support).  Accordingly, the court should disregard

Plaintiff's Local Rule 56.1(a) statement in its entirety.  *See Indus. Quick Search, Inc. v. Miller,*

*Rosado & Algois, LLP*, No. 13 CIV. 5589 (ER), 2018 WL 264111, at *1 n.4 (S.D.N.Y. Jan. 2,

2018) (declining to consider statements in the plaintiffs' Local Rule 56.1 statement because

"Plaintiffs' reliance on unsupported assertions in their 56.1 are legion").

## II.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT IS PROCEDURALLY DEFICIENT.

Plaintiff's motion for partial summary judgment is procedurally deficient, and should be

denied on this basis alone.

Under Rule 56(a) of the Federal Rules of Civil Procedure, a party may move for

summary judgment as to the entire case, or for "partial summary judgment on a claim or

defense," or on "part of each claim or defense."  *Martinez*, 930 F. Supp. 2d at 518.  But Rule 56

does not authorize partial summary judgment motions seeking to resolve only non-dispositive

factual disputes.  *See S.E.C. v. Thrasher*, 152 F. Supp. 2d 291, 295 (S.D.N.Y. 2001).  In

*Thrasher*, the plaintiff sought partial summary judgment only as to certain elements of its claims.

The court rejected the plaintiff's motion as procedurally improper, explaining that "it is not

appropriate to use summary judgment as a vehicle for fragmented adjudication of non-

determinative issues."  *Id*.  In support of its position, the plaintiff pointed to then-Rule 56(d)

(now modified as Rule 56(g)), which permits a court to enter an order resolving certain factual

disputes if the court does not grant the relief requested.  *Id*. at 296-97.  But the court reasoned

that this "rule does not authorize an independent motion to establish certain facts as true but merely serves to salvage some constructive result from the judicial effort expended in denying a proper summary judgment motion." *Id*. at 297 (citation omitted); *see also Prudential Ins. & Annuity Co. v. State St. Bank & Tr. Co. (In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.)*, 772 F. Supp. 2d 519, 546 & n.18 (S.D.N.Y. 2011); *Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of N.Y.*, No. 06-CV-1164, 2010 WL 3907489 (TJM/DEP), at *58 (N.D.N.Y. Sept. 30, 2010) ("The use of Rule 56 to resolve an element of a claim is wasteful of judicial resources in situations, such as this one, where there is a dispute on the remaining issues which will necessarily be resolved at trial."); *Melini*, 2009 WL 413608, at *8.

Plaintiff's summary judgment motion asks the court to decide a very narrow issue: whether there is a "genuine issue of material fact that, at a minimum, Herbal Zen contains nonfunctional slack-fill in the amount corresponding to the volume occupied by 0.5 lbs of protein powder or, in the alternative, in the amount corresponding to 1 inch of the Herbal Zen container's vertical capacity." Pltf.'s Mot. for S.J. at 3. She is not seeking judgment on any of her claims, or even as to any element of her claims. And as discussed in more detail below, a finding of nonfunctional slack-fill does not dispose of any of her claims. The fact of nonfunctional slack-fill does not prove that the Herbal Zen Product was materially misleading to a reasonable consumer, or that consumers relied on the size of the container when purchasing the product, or that Iovate acted with fraudulent intent.

What's worse, Plaintiff's summary judgment motion would not even put to rest the question of nonfunctional slack-fill. Plaintiff only asks the court to decide whether there is a *minimum* amount of nonfunctional slack-fill in the Herbal Zen Product. She wishes to reserve for trial the question of "[w]hether Herbal Zen contains *additional* non-functional slack-fill

beyond this proven minimum . . . ."  Pltf.'s Mot. for S.J. at 3 (emphasis added); *see id*. at 10.

Accordingly, any determination of this issue is premature at this stage of the proceedings.  *See*

*Thrasher*, 152 F. Supp. 2d at 296 n.2 ("[T]o permit such requests would result in 'numerous and

repetitive motions seeking to resolve limited factual issues in a piecemeal fashion . . . [which]

would waste judicial resources in almost every case.'" (citation omitted)).

## III. PLAINTIFF'S SUMMARY JUDGMENT MOTION IMPROPERLY PRECEDES CLASS CERTIFICATION.

Plaintiff's summary judgment motion is also an improper attempt to cut straight to the

merits before obtaining class certification.

Federal Rule of Civil Procedure 23(c)(1)(A) directs courts to "[a]t an early practicable

time after a person sues or is sued as a class representative . . . determine by order whether to

certify the action as a class action."  In *Philip Morris Cos. v. Nat'l Asbestos Workers Med. Fund*

*(In re Philip Morris Inc.)*, 214 F.3d 132 (2d Cir. 2000), the Second Circuit held that district

courts must decide the issue of class certification prior to a final determination on the merits.  *Id*.

at 135.  The Second Circuit relied on Supreme Court precedent discussing "the impropriety of

deciding class certification after conducting a preliminary inquiry into the merits of plaintiffs'

case" and explained that "'[s]uch a procedure contravenes [Rule 23] by allowing a representative

plaintiff to secure the benefits of a class action without first satisfying the requirements for it.  He

is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of

the class without any assurance that a class action may be maintained.'"  *Id*. at 134-35 (quoting

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)).

New York courts have applied *Philip Morris* when declining to rule on summary

judgment until class certification has been addressed.  *See, e.g.*, *Flo & Eddie, Inc. v. Sirius XM*

*Radio Inc.*, 80 F. Supp. 3d 535, 543-44 (S.D.N.Y. 2015) (courts "should defer a ruling on the

merits until the issue of class certification is decided."); *Cuzco v. Orion Builders, Inc.*, 262

F.R.D. 325, 335 (S.D.N.Y. 2009) ("A court's decision on the merits, however, should ordinarily

not occur before or simultaneous with a decision on class certification.").  An initial decision as

to class certification is even more critical here in light of the standing and personal jurisdiction

arguments raised in Iovate's motion to dismiss.  *See* Def.'s Mot. to Dismiss at 4-9, 20-23.

Accordingly, Plaintiff's summary judgment motion must be denied on this basis or,

alternatively, Plaintiff may proceed with this suit on an individual basis only.

## IV.   PLAINTIFF HAS FAILED TO SHOW THAT SHE IS ENTITLED TO SUMMARY JUDGMENT.

In addition to the procedural deficiencies discussed above, Plaintiff has no evidence to

support her claims.  If nothing else, her motion should be denied on this basis.

### A.   Plaintiff Has No Evidence to Support Her Claims under GBL §§ 349 and 350.

To prevail on her claims under GBL §§ 349 and 350, Plaintiff must prove that Iovate

"engaged in (1) consumer oriented conduct that is (2) materially misleading and that (3) plaintiff

suffered injury as a result of the allegedly deceptive act or practice."  *City of N.Y. v. Smokes–*

*Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009); *New World Sols., Inc. v. NameMedia Inc.*,

150 F. Supp. 3d 287, 329 (S.D.N.Y. 2015) (citation omitted).  "A claim of false advertising

under GBL § 350 must meet all of the same elements as a claim under GBL § 349."

*Wurtzburger v. Ky. Fried Chicken*, No. 16-cv-08186 (NSR), 2017 U.S. Dist. LEXIS 205881, at

*5 (S.D.N.Y. Dec. 13, 2017) (citation omitted).  Plaintiff, however, has no evidence that she was

deceived, let alone that members of the public were materially misled.  The Court should deny

summary judgment on Plaintiff's individual and classwide claims.

1.     **Plaintiff Has No Evidence that the Herbal Zen Packaging Is Likely to Mislead a Reasonable Consumer or is Material.**

To survive summary judgment on her GBL §§ 349 and 350 claims, Plaintiff must show that the Herbal Zen Product packaging was "likely to mislead a reasonable consumer acting reasonably under the circumstances[]." *See Stewart v. Riviana Foods Inc.*, No. 16-CV-6157 (NSR), 2017 U.S. Dist. LEXIS 146665, at *22 (S.D.N.Y. Sept. 11, 2017) (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)). "The term 'likely' indicates that deception must be probable, not just possible." *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016) (citation omitted). Moreover, a few isolated examples of deception—and here we have only one example alleged—are insufficient to sustain a class-wide claim. *See Frederick v. Capital One Bank (USA), N.A.*, No. 14-CV-5460 AJN, 2015 WL 5521769, at *10 (S.D.N.Y. Sept. 17, 2015) ("In order to fall within § 349, the challenged practices 'must have a broad impact on consumers at large[]'" (citation omitted)). Plaintiff fails to meet this standard for five reasons.

First, Plaintiff has no evidence that she was misled by the Herbal Zen Product packaging into believing she was getting more than the stated 1.5 lbs/680 grams of protein powder. In the Complaint, she alleges that she made a one-time purchase of a single container of the Herbal Zen Product for $19.97 and was injured because she "did not receive the quantity that she paid for and was promised." Compl. ¶ 18; *see also* Pltf.'s Mot. for S.J. at 2. She contends that she paid for a container of protein powder that was "functionally full," but the container she received contained "approximately 41% slack-fill, with a lot of it being nonfunctional slack-fill." Compl. ¶ 18; *see also* Pltf.'s Mot. for S.J. at 9. Plaintiff states nothing about whether the amount of the Herbal Zen Product was material to her purchase, or how much protein powder she expected to receive at the time of purchase. But even if she did, she has no evidence to back it up.

9

Second, Plaintiff has no evidence that consumers were likely to be misled by the Herbal Zen Product packaging into believing they were getting more than the stated amount of protein powder.  Plaintiff must submit some evidence of classwide deception—such as expert evidence or consumer surveys—to support her claim.  *See Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 94–95 (S.D.N.Y. 2010) ("'[T]o satisfy the commonality requirement in a class action alleging deceptive acts and practices [under GBL § 349] . . ., the proof must show that *each* plaintiff was reasonably deceived by the defendant's misrepresentations . . . .'" (citation omitted)).  Plaintiff has failed to do so here.

Third, as Iovate argued in its Motion to Dismiss (Dkt. No. 20), any claim of deception or materiality is implausible here.  The front label of the Herbal Zen Product clearly and accurately states that the product contains 1.5 lbs./680 grams of protein powder, that each serving size is 32 grams, and that there are approximately 21 servings in the container.  *See* Ex. A to Def.'s Mot. to Dismiss; *see also Stewart*, 2017 U.S. Dist. LEXIS 146665, at *22 (citation omitted) (advertising statements must be viewed "in light of its context on the product label or advertisement as a whole[]" to determine whether a reasonable consumer would have been materially misled by the challenged representation).  Plaintiff fails to even address this salient fact in her summary judgment motion.

In fact, a court in this district recently found a virtually identical claim, brought by the same Plaintiff's counsel as in this case, to have been implausibly alleged on this basis.  *See Alce v. Wise Foods, Inc.*, No. 17-cv-2402 (NRB), 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018).  In *Alce*, the plaintiff brought suit under GBL §§ 349 and 350, claiming that the slack-fill in the defendant's potato chip products deceived consumers into believing that the products contained far more potato chips than they actually do.  *Id.* at *1-2.  The court rejected the argument that the

slack-fill would have misled a reasonable consumer, finding that "the weight of the chips enclosed is prominently displayed on the front of each Product, in large sized font, in a color differentiated from the package background, and there is no allegation that the full weight represented is not actually in the bag." *Id.* at *10. Moreover, as here, the plaintiffs in *Alce* acknowledged that "consumers may have come to expect significant slack-fill in potato chips and other snack products." *Id*. at *11. For these two reasons, the court concluded that "no reasonable consumer would be misled by the presence of slack-fill, even assuming it were non-functional, in the Products' packaging." *Id*.; *see also Daniel v. Mondelez Int'l, Inc*., 287 F. Supp. 3d 177, 192 (E.D.N.Y. 2018) ("[A]bsent exceptional circumstances, a reasonable consumer acting reasonably would find accurate, clearly visible representations of net weight, serving size, and number of servings to offset any misrepresentations arising from non-functional slack-fill.").

As in *Alce*, Plaintiff here does not claim that the net weight disclosure was inadequate in any way, and there is no indication that Plaintiff (or the rest of the putative class) received anything less than 100% of the product that was promised. Indeed, Plaintiff even admits that consumers have come to "expect significant slack-fill in protein powder products[.]" Compl. ¶ 44. Established case law holds that a deception claim cannot stand where a product is accurately labeled with the quantity of the product. *See Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 227-28 (S.D.N.Y. 2011) ("There can be no claim for deceptive acts or practices, however, when the alleged deceptive practice was fully disclosed.") (citation omitted); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 531 (S.D.N.Y. 2009) ("It would be remarkable indeed if a consumer were significantly concerned about obtaining the necessary daily requirement of calcium that he or she would drink a sports drink to obtain it, and yet so

11

unconcerned that he or she would not even read the label that says the sports drink is not a sufficient source of calcium.").

Fourth, Plaintiff's argument that there is nonfunctional slack-fill based on a comparison of the Herbal Zen Product to Iovate's "Purely Inspired Product," which is sold in an identically sized container labeled with a net weight of 2 lbs./907 grams and containing approximately 28 servings, fails to prove her claims. Plaintiff's comparison rests on two faulty premises: (1) that the Herbal Zen Product and the Purely Inspired Plant-Based Product are identical;[4] and (2) that comparing slack-fill across different products is an accepted means of proving nonfunctionality. While the contents of the Herbal Zen Product and the Purely Inspired Product are admittedly similar, they are not identical. Specifically, the flavoring formulas used for the products differ. Declaration of Bruce Smith ("Smith Decl."), at ¶ 22. Moreover, New York courts have rejected the notion that comparing similar products is a valid means of establishing nonfunctional slack-fill. *See Alce*, 2018 WL 1737750, at *8 (S.D.N.Y. Mar. 27, 2018) (relying on FDA guidance stating that "there is significant variability in the amount of the slack-fill in packages, both between and within commodity classes and even within a single-product line" in rejecting the plaintiff's comparisons to similar products (citation omitted)).

Fifth and finally, even if Plaintiff could establish that there is nonfunctional slack-fill in the Herbal Zen Product by a comparison to the Plant Protein Product (she cannot), her claims under GBL §§ 349 and 350 would still fail. The existence of nonfunctional slack-fill does not prove that a product is materially misleading. In *Daniel*, 287 F. Supp. 3d at 181, the plaintiff

---

[4] Plaintiff also compares the Herbal Zen Product to two sizes of the Purely Inspired Organic Greens Product in an effort to show that the Herbal Zen Product could have been packaged in a smaller container. Pltf.'s Mot. for S.J. at 8. This comparison is patently inapt. The Organic Greens Products are entirely different from the Herbal Zen Product—different ingredients, different serving sizes, and different customer bases, to point out the most obvious. Smith Decl. at ¶¶ 26-27. Critically, the Organic Greens Products come in different net weights (8.57 ounces and 7.17 ounces)—hence why they can fit into smaller containers.

12

alleged that the amount of slack-fill in the defendant's candy product misrepresented the amount of candy in the box.  The court rejected this argument:  "[S]ections 349 and 350 require more than a determination as to whether the slack-fill, standing alone, constitutes a misrepresentation." *Id*. at 189.  "Rather, GBL §§ 349 and 350 require an additional finding that a reasonable consumer in like circumstances would consider the misrepresentation *material*."  *Id*. at 189-90.  "[B]ecause consumers have come to expect at least *some* slack-fill, context, including labels, are likely important considerations in assessing product amount or quantity."  *Id*. at 191.

The *Daniel* court further explained that the plaintiff incorrectly "assumes that a reasonable consumer would *only* consider the size of the product in making purchasing decisions based on perceived amount or quantity of food."  *Id*.  Rather, "a reasonable consumer takes into consideration factors aside from package size in assessing the amount or quantity of a product." *Id*. at 192.  For these reasons, the court concluded that the "[p]laintiff's statutory claims fail because non-functional slack-fill as defined by the FDCA and parallel state statutes, even assuming its existence, are not *per se* material misrepresentations under sections 349 and 350." *Id*. at 190; *see also Alce*, 2018 WL 1737750, at *11 ("[G]iven the prominence with which the Products' weight appears on the front of the packages, as well as consumers' expectations of slack-fill, we conclude as a matter of law that no reasonable consumer would be misled by the presence of slack-fill, *even assuming it were non-functional*, in the Products' packaging." (emphasis added)).

For these reasons, no reasonable consumer could be misled by the Herbal Zen Product, and Plaintiff has failed to prove otherwise.

> ### 2.   There is Genuine Dispute of Material Fact as to Whether the Herbal Zen Product Contains Any Nonfunctional Slack-Fill, Much Less 0.5 lbs or 1 inch of the Product's Vertical Capacity.

The gravamen of Plaintiff's motion for summary judgment is that there is no dispute of

material fact as to whether the Herbal Zen Product contains nonfunctional slack-fill in the amount of 0.5 lbs of protein powder or, in the alternative, 1 inch of the container's vertical capacity.  Pltf.'s Mot. for S.J. at 3.  Plaintiff is wrong for two reasons.  First, the headspace in the Herbal Zen Product container has a functional purpose.  Second, Plaintiff's measurements of the slack-fill in the Herbal Zen Product are unreliable.

### a.  *Slack-fill Is Deemed Functional in Certain Circumstances.*

"A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." 21 C.F.R. § 100.100(a).  "Yet not all slack-fill is misleading; rather, slack-fill is only misleading if . . . the slack-fill is non-functional."  *Alce*, 2018 WL 1737750, at *3.  "Slack-fill is, in turn, non-functional only if none of the following reasons for its existence apply:  (1) protection of the contents of the package; (2) requirements of the machines used to enclose the contents in the package; (3) unavoidable settling during shipping and handling; (4) the need for the package to perform a specific function; (5) the food is packaged in a reusable container with empty space as part of the presentation of the food; and/or (6) the inability to increase the fill level or reduce the package size because, for example, the size is necessary to accommodate food labeling requirements or to discourage theft."  *Id*. (citing 21 C.F.R. § 100.100(a)(1)-(6)).

Plaintiff concedes that some of these exemptions may apply to the Herbal Zen Product.  *See* Pltf.'s Mot. for S.J. at 5.  For example, she acknowledges that some of the slack-fill may be intended for "protecting contents, accommodating the machines that enclose the contents, [or] accommodating settling."  *Id*.  But she ultimately concludes without any evidence that some portion of the slack-fill serves no purpose and thus is nonfunctional.  She is wrong—the slack-fill in the Herbal Zen Product containers performs a specific function.

14

### b. The Slack-fill in the Herbal Zen Product is Functional.

Here, there is a "need for the package to perform a specific function." 21 C.F.R.

§ 100.100(a)(4).  Headspace in the Herbal Zen Product is necessary to prevent aerosolized

product from escaping the container during packaging.  (Smith Decl., ¶ 8.)  The containers are

filled by sending the mixed bulk powder down a chute into the container.  (*Id.*, ¶ 7.) When the

"bolus" of protein powder hits the bottom of the container, a portion of the protein powder

aerosolizes.  (*Id.*, ¶ 8.)  Headspace at the top of the container helps contain the aerosolized

powder and prevent any from escaping.  (*Id.*)  If aerosolized powder settles on the container's

rim, it will prevent the heat sealed induction liner from bonding to the rim, resulting in an

unsealed container and spillage.  (*Id.*, ¶ 9.)  If the aerosolized powder soils the container's

exterior, it will impair the adhesion of the label.  (*Id.*)

Headspace performs another specific function—it provides necessary space for placing

the scoop.  The scoop is placed on top of the powder once it is in the container.  (*Id.*, ¶ 10.)  This

is beneficial for the consumer because it makes the scoop easier to find once they open the

container.  (*Id.*)  Relatedly, headspace permits the consumer to tilt the container after opening it

to visually search for the scoop without spilling any powder.  (*Id.*)  Due to the vibration that

occurs during transport, the scoop will usually bury itself in the powder.  (*Id.*)  Allowing

consumers to visually search for the scoops prevents them having to bury their hands in the

powder, potentially contaminating it with skin, arm hair, and other detritus.  (*Id.*)

The necessity for additional headspace for the scoop is also the reason why Plaintiff's

comparison argument with the Purely Inspired Product fails.  The Purely Inspired Product was

sold in the same container, but in two sizes:  1.5 lbs and 2.0 lbs.  The 2lbs. iteration of the Purely

Inspired Product was developed toward the end of that product line, and was intended as a bonus

size for repeat customers who already used other Purely Inspired protein powders.  (*Id.*, ¶ 23.)

Although scoops were included in the 2 lbs. product, it was presumed that users would have their own scoops from other products available to them and would not need extra headspace to search for and pull out the scoop (and thus avoid spillage of the powder).  (*Id.*)

        *c.  Plaintiff's Slack-fill Measurements are Unreliable.*

In any event, Plaintiff's back of the envelope slack-fill measurements are unreliable and cannot be used for purposes of summary judgment.  As an initial matter, her counsel's "visual estimates" (Pltf.'s Mot. for S.J. at 10) should not be entitled to any evidentiary weight.  Such eyeball "approximat[ions]" are an insufficient basis for summary judgment.

Further, the court cannot hold there is a minimum amount of nonfunctional slack-fill based on the measurements of a *single* container because the amount of headspace varies even among individual containers in the same product line.  (*Id.*, ¶ 21.)  This is unsurprising because the bulk density of any given raw material can vary considerably.  (*Id.*, ¶ 18.)  The same holds true for the tapped density.  Tapped density is the density after a machine repeatedly taps the container holding the powder.  (*Id.*, ¶ 16.)  This is intended to simulate the vibration and bumping that occurs during transport.  (*Id.*)  Internal Iovate testing shows a 20% increase in density after tapping for certain products, and a corresponding drop in volume.  (*Id.*, ¶ 17.)  But these are inherently just estimates and how much the protein powder compacts will inevitably be different from one container to the next based on how the protein powder settles.  (*Id.*, ¶ 21.)

For these reasons, there is a genuine dispute of material fact as to whether the slack-fill in the Herbal Zen Product is functional.  But, as discussed above, even if the slack-fill were nonfunctional, it would still not prove material consumer deception.

    **3.**     **Plaintiff Has No Evidence that She Was Injured or Is Entitled to Monetary Relief, Individually or Classwide.**

Plaintiff cannot prove that she is entitled to classwide or individual monetary relief.  To

recover under GBL §§ 349 and 350, a plaintiff must prove that she "suffered injury as a result of the allegedly deceptive act or practice." *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061 (NSR), 2017 WL 6398747, at *3 (S.D.N.Y. Dec. 12, 2017) (citation omitted).  This "typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *18 (S.D.N.Y. Oct. 26, 2016) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015)).  "This may come in the form of an overpayment or 'price premium,' whereby a plaintiff pays more than she would have but for the deceptive practice." *Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *18.

In the complaint, Plaintiff alleges that she was injured in the amount of $4.04.  Compl. ¶ 50.  Plaintiff calculated this "injury" by measuring the difference between the amount of powder in the Purely Inspired Product and the amount of powder in the Herbal Zen Product and multiplying that differential to the price she paid for the Herbal Zen Product.  Compl. ¶¶ 49-50.  However, as Iovate argued in its Motion to Dismiss, Plaintiff ignores that she got exactly what she paid for—1.5 lbs, 680 grams, and approximately 21 servings of protein powder.  She does not allege that she paid a price premium for the 1.5 lbs of protein powder she received.  Further, Plaintiff fails to acknowledge that there could be price differences between the Herbal Zen Product and the Purely Inspired Product due to different net weights, number of servings, brands, or raw ingredients.  *See* Def.'s Mot. to Dismiss at 20.

Plaintiff fails to provide any evidence to support her allegations of injury at summary judgment.  There is no evidence that she purchased the Herbal Zen Product, let alone any factual support showing how much she paid for the product, how much competitor's products cost, or the amount of the alleged "price premium."  Nor does Plaintiff offer any theory of classwide

17

damages in compliance with *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  *See also Ebin v. Kangadis Food Inc.*, No. 13 CIV. 2311 (JSR), 2014 WL 737878, at *2-3 (S.D.N.Y. Feb. 25, 2014) (offering expert evidence to prove damages under a "benefit of the bargain" theory and a "price premium" theory); *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 (VB), 2017 U.S. Dist. LEXIS 125621, at *49-51 (S.D.N.Y. Aug. 7, 2017) (discussing expert evidence and consumer surveys in assessing the plaintiff's motion for partial summary judgment).

For these reasons, Plaintiff has failed to establish injury as to herself or the putative class.

### B.     Plaintiff Fails to Prove That She Is Entitled to Summary Judgment on Her Common-Law Fraud Claim.

Plaintiff's motion for summary judgment does not support (or even mention) her purported claim for common-law fraud on behalf of herself and the putative class.  "To recover damages for fraud under New York law, a plaintiff must prove:  (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury."  *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 478, 484 (S.D.N.Y. 2012), *aff'd sub nom., Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014); *see also AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 208 (2d Cir. 2000), *aff'd*, 39 Fed. Appx. 667 (2d Cir. 2002).  "The elements of fraud are narrowly defined, requiring proof by clear and convincing evidence."  *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 607 (N.Y. 1999).  Plaintiff fails to establish any element of her fraud claim individually or on a classwide basis.

### 1.     Plaintiff Has Not Shown Any Misrepresentation of a Material Fact.

Plaintiff has failed to prove that the Herbal Zen Product misrepresents a material fact. This element is narrowly defined so that "[n]ot every misrepresentation or omission rises to the

18

level of fraud." *Herzfeld v. JPMorgan Chase Bank, N.A.*, 354 Fed. Appx. 488, 489 (2d Cir.

2009) (citing *Gaidon*, 725 N.E.2d at 606-08). Rather, "'[a] misrepresentation is material to a

fraud claim only if it is the type of misrepresentation likely to be deemed significant to a

reasonable person considering whether to enter into the transaction.'" *Rouse v. Elliot Stevens,*

*Ltd.*, No. 13-CV-01443 (SN), 2016 WL 6520065, at *6 (S.D.N.Y. Nov. 3, 2016) (quoting *Moore*

*v. PaineWebber, Inc.*, 189 F.3d 165, 170 (2d Cir. 1999)).

For the reasons discussed above, Plaintiff got what she paid for and thus cannot establish

that the Herbal Zen Product misrepresented its contents. *See supra* Section IV(A)(1). Moreover,

a genuine dispute of material fact exists as to whether the slack-fill in the Herbal Zen Product is

nonfunctional. *See supra* Section IV(A)(2)(b). And even if Plaintiff could establish that the

slack-fill was nonfunctional, that falls far short of establishing that the size of the Herbal Zen

Product container constitutes a material misrepresentation. *See supra* Section IV(A)(1). As

such, Plaintiff has failed to establish a misrepresentation as to a material fact as to herself or the

putative class.

### 2.    Plaintiff Has Not Established Fraudulent Intent.

"'The key element in any fraud action is scienter, and it is always difficult to prove

scienter.'" *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 363 (S.D.N.Y. 1988) (citation

omitted); *see also Ritchie v. N. Leasing Sys., Inc.*, No. 12-CV-4992 (KBF), 2016 WL 1241531, at

*12 (S.D.N.Y. Mar. 28, 2016), *aff'd sub nom., Ritchie v. Taylor*, 701 Fed. Appx. 45 (2d Cir.

2017). Under New York law, "[t]o establish scienter [the] plaintiff must show an intentional or

reckless misstatement made with the intent that [the] plaintiff rely upon it." *Pasternack v. Lab.*

*Corp. of Am.*, No. 10 CIV. 4426 (PGG), 2011 WL 3478732, at *7 (S.D.N.Y. Aug. 1, 2011).

"The plaintiff must establish that fraudulent intent existed in the mind of the defendant."

*Signature Apparel Grp. LLC v. Laurita (In re Signature Apparel Grp. LLC)*, 577 B.R. 54, 89

(Bankr. S.D.N.Y. 2017) (citation omitted).

Plaintiff has no evidence that Iovate knew that the Herbal Zen Product allegedly misrepresented the amount of protein powder being sold or that Iovate sold the Herbal Zen Product with the intention of deceiving consumers as to the amount of product sold.  Again, Plaintiff's motion fails to even reference this element of Plaintiff's fraud claim.  This alone is fatal to Plaintiff's fraud claim.  *See Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003).  What's more, the logical inference from the record is that Iovate provides the headspace to aid consumers in their use and enjoyment of the product—not to deceive them.  *See supra* Section IV(A)(2)(b).  Thus, at a minimum, there is a genuine dispute of material fact regarding Iovate's intentions, precluding summary judgment on Plaintiff's claim.

### 3. Plaintiff Has Not Shown Justifiable Reliance on the Size of the Herbal Zen Product's Container Despite the Label's Accurate Net Weight.

Plaintiff has also failed to adduce any evidence that she or the putative class members relied on the Herbal Zen Product packaging prior to purchase and were led to believe that they were getting more protein powder than was in the Product.  "An evaluation of the reasonable-reliance element [involves] many factors to consider and balance, no single one of which is dispositive.  Accordingly, reasonable reliance is often a question of fact for the jury rather than a question of law for the court."  *Abu Dhabi Commercial Bank*, 888 F. Supp. 2d at 445.  "The requirement of reliance is satisfied only if the reliance is reasonable."  *Wash. Capital Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 365 (S.D.N.Y. 2005).

Plaintiff has not submitted any evidence showing her reliance on the Product packaging prior to purchase.  Further, the circumstances of this case demonstrate that any reliance would not be justified.  As discussed above in Section IV(A)(1), the Product's label clearly displays the net weight of its contents, undermining any argument that the consumers justifiably relied on the

container's size when assessing how much protein powder was inside.  *See Alce*, 2018 WL 1737750, at *11 ("[G]iven the prominence with which the Products' weight appears on the front of the packages, as well as consumers' expectations of slack-fill, we conclude as a matter of law that no reasonable consumer would be misled by the presence of slack-fill, even assuming it were non-functional, in the Products' packaging."); *Daniel*, 287 F. Supp. 3d at 192 (explaining that "a reasonable consumer takes into consideration factors aside from package size in assessing the amount or quantity of a product").

Similarly, Plaintiff has no evidence of classwide reliance, e.g., that reasonable consumers reviewed the Product packaging and believed that, despite the disclosure regarding the net weight of the Product, based on the size of the Product container, the Product contained more protein powder than it did.  Such evidence is necessary to support a fraud claim on behalf of a class.  *See Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 134, 144 (S.D.N.Y. 2015) (courts cannot "presume, as a matter of law, that the element of reliance is satisfied for each putative class member." (citation omitted)); *Hazelhurst v. Brita Prods. Co.*, 744 N.Y.S.2d 31, 33 (N.Y. App. Div. 2002) ("[R]eliance may not be presumed where, as here, a host of individual factors could have influenced a class member's decision to purchase the product.").

### 4.    Plaintiff Cannot Establish Injury.

Finally, as shown above, Plaintiff has not proven any injury cognizable under New York law as to herself or the putative class.  *See supra* Section IV(A)(3).  Because Plaintiff has failed to put forth evidence to support any required element of a common-law fraud claim, her motion for summary judgment on this claim fails.

## V.    PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF.

Plaintiff does not have Article III standing to assert claims for injunctive relief under GBL §§ 349 and 350.  U.S. Const. art. III, § 2.  Article III requires that "(1) the plaintiff must

have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the

conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision."

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted).  And "[a]

plaintiff seeking to represent a class must personally have standing."  *Id.* (citation omitted).

Further, to obtain injunctive relief, a plaintiff must establish a real or immediate threat of future

injury.  *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)).  "Although past

injuries may provide a basis for standing to seek money damages, they do not confer standing to

seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in

the future in a similar way."  *Nicosia*, 834 F.3d at 239.

Plaintiff lacks standing for injunctive relief for two reasons:  (1) She is already aware of

how much protein powder is contained in the Herbal Zen Product; and (2) the Herbal Zen

Product is no longer sold and thus there is no risk of future injury.

**A.      Plaintiff Lacks Standing to Seek Injunctive Relief Because She Is Already
        Aware of How Much Protein Powder Is Contained in the Herbal Zen
        Product.**

First, Plaintiff lacks standing for injunctive relief because she cannot establish future

injury given her knowledge of the contents of the Herbal Zen Product.  Once a person becomes

aware of an alleged misrepresentation, there is no longer a risk that the plaintiff will be deceived

in the future.  *See, e.g.*, *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62 (S.D.N.Y. 2013).

If there is no risk of future deception, there is no risk of future injury, which renders an

injunction inappropriate.  For example, in *Vaccariello*, the court reasoned that the plaintiff could

not satisfy "the injury-in-fact requirement in actions for injunctive relief" because the plaintiff

was "now keenly aware of XM's renewal practices and policies, and as such, he is very unlikely

to suffer from being billed without his knowledge."  *Id.* at 68; *see also Kommer v. Bayer*

*Consumer Health*, 252 F. Supp. 3d 304, 309-10 (S.D.N.Y. 2017), *aff'd*, 710 Fed. Appx. 43 (2d

22

Cir. 2018) (holding that plaintiff lacked standing to seek an injunction when "by stating that he would not have bought the Inserts had he 'known the truth' about the allegedly deceptive marketing, Plaintiff essentially concedes that he will not buy the Inserts, or be misled by Defendants' marketing, again in the future").

Here, Plaintiff does not adequately prove risk of future injury under New York law.  She is already aware of how much protein powder is inside the Herbal Zen Product's container. There is therefore no risk that the alleged deception will occur again in the future.  Accordingly, Plaintiff's claim that she would consider buying the product again fails to rise to the level of a real and immediate threat of injury.  *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564-65 (S.D.N.Y. 2016) (holding that plaintiff's allegations that "'Plaintiff would consider purchasing Honest's products in the future[]'" were "insufficient to allege future injury[]" and thus plaintiff "d[id] not have standing to seek injunctive relief[]"); *see also Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *12-13 (finding no likelihood of future injury where plaintiff alleged that he "'would still be willing to purchase the current formulation' of the Candy 'so long as [Mondelez] engages in corrective advertising[]'" because, if defendant did not engage in corrective advertising, plaintiff would never purchase the product again (citation omitted)).

Because Plaintiff has failed to establish a real and immediate threat of future injury, she lacks standing to seek injunctive relief under GBL §§ 349 and 350.

**B.**     **Plaintiff Lacks Standing to Seek Injunctive Relief Because the Herbal Zen Product Is No Longer Sold.**

Second, Plaintiff also lacks standing to seek injunctive relief because the Herbal Zen Product is off the market, and an injunction issued by this Court would not redress the alleged deception.  *See* Smith Decl. at ¶ 25.  Nor does Iovate presently intend to sell the product again. *See id.*

As the district court in *Nicosia v. Amazon.com, Inc.* explained, "[e]ven if Plaintiff had demonstrated an ongoing injury or sufficient risk of future injury, he would lack standing under the redressability prong of the traditional standing test because his alleged injury . . . would not be redressed by the sought injunction, which seeks to impose packaging requirements, enjoin future sales, and notify other past purchasers of dietary supplements."  84 F. Supp. 3d 142, 158 n.11 (E.D.N.Y. 2015), *rev'd in part on other grounds*, 834 F.3d 220.  The Second Circuit affirmed the district court's denial of a preliminary injunction on standing grounds, explaining that there was no risk of future injury, in part because "Amazon ha[d] ceased selling 1 Day Diet on its website . . . ."  834 F.3d at 239 (emphasis omitted).

For the foregoing reasons, Plaintiff is not entitled to or eligible for injunctive relief.

## CONCLUSION

For the reasons set forth above, Iovate respectfully requests that the Court deny Plaintiff's motion for partial summary judgment.

Dated:  May 4, 2018          MORRISON & FOERSTER LLP
New York, New York

                            */s/ Claudia M. Vetesi*
                            Claudia M. Vetesi, *pro hac vice*
                            425 Market Street
                            San Francisco, CA 94105
                            Telephone:  (415) 268-7000
                            Facsimile:  (415) 268-7522
                            Email:  CVetesi@mofo.com

                            Joel C. Haims
                            Rhiannon N. Batchelder

250 West 55th Street
New York, NY 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Email:  JHaims@mofo.com
Email:  RBatchelder@mofo.com


*Attorneys for Defendant Iovate Health
Sciences U.S.A. Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2018, I caused to be served a true and correct copy of

Defendant Iovate Health Sciences U.S.A's Memorandum of Law in Opposition to Plaintiff's

Motion for Partial Summary Judgment via ECF on counsel of record for Plaintiffs.

Dated:  New York, New York
      May 4, 2018

              */s/ Claudia M. Vetesi*
              Claudia M. Vetesi

ny-1322012