UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIAO XIN HU, *on behalf of herself and all others similarly situated*,

Plaintiff,

-against-

IOVATE HEALTH SCIENCES U.S.A. INC.,

Defendant.

**OPINION AND ORDER**

17 Civ. 09427 (ER)

Ramos, D.J.:

This is a so-called "slack-fill" case.[1] In it, Miao Xin Hu ("Hu") alleges, on behalf of herself and all others similarly situated, that Iovate Health Sciences U.S.A. Inc., ("Iovate") sold a plant-based protein powder, Herbal Zen Nutrition, ("Herbal Zen") in containers that were not adequately filled and, as a result, engaged in deceptive trade practices, false advertising, and common law fraud. Doc. 1, ¶¶ 65–97. Hu now moves for partial summary judgment. Doc. 16. Iovate cross-moves primarily to dismiss Hu's complaint for lack of subject-matter jurisdiction, for lack of personal jurisdiction, and for failure to state a claim. Doc. 19. For the reasons set forth below, Hu's motion is DENIED and Iovate's motion is GRANTED.

**I.  BACKGROUND**

Federal law prohibits the "misbranding of any food . . . in interstate commerce," 21 U.S.C. § 331(b), and provides that "food shall be deemed to be misbranded . . . [i]f its container is so made, formed, or filled as to be misleading." 21 U.S.C. § 343(d). According to federal

---

[1] In commercial packaging, including food packaging, "[s]lack-fill is the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a).

regulation, an opaque container can be misleading to consumers "if it contains nonfunctional slack-fill." 21 C.F.R. § 100.100(a). The empty space in a package qualifies as nonfunctional slack-fill unless the space (1) "[p]rotect[s] the contents of the package;" (2) enables the "machines used for enclosing the contents in such package" to function; (3) derives unavoidably from the "product settling during shipping and handling;" (4) allows the "package to perform a specific function . . . where such function is inherent to the nature of the food and is clearly communicated to consumers;" (5) fills a reusable, durable commemorative, or promotional package; or (6) reflects the "[i]nability to increase level of fill or to further reduce the size of the package." *Id.*

Similarly, New York statutory law prohibits the sale of "misbranded" food, N.Y. Agric. & Mkts. Law § 199-a, and provides that "[f]ood shall be deemed to be misbranded . . . if its container is so made, formed, colored or filled as to be misleading," N.Y. Agric. & Mkts. Law § 201. The state regulations that implement and interpret these provisions incorporate the portions of federal regulations concerning slack-fill. N.Y. Comp. Codes R. & Regs. tit. 1, § 259.1(a)(2) ("For the purpose of the enforcement of article 17 of the Agriculture and Markets Law," that article that covers §§ 199–214-O, "the commissioner hereby adopts . . . Part 100 of title 21 of the *Code of Federal Regulations,* containing the Federal definitions and standards for food packaging and labeling").

Hu alleges that she purchased Herbal Zen and that Iovate packaged it with an unlawful amount of nonfunctional slack-fill. To make this argument, she asserts that Iovate sells a comparable plant-based protein powder, Purely Inspired, in an identically-sized, opaque container but the Purely Inspired containers have more protein powder. Doc. 1 ¶ 31. Specifically, Hu claims that Iovate fills each Herbal Zen container with 1.5 lbs. of protein

powder, yielding a slack-fill of 41%, Doc. 1 ¶¶ 1, 2, 29, but fills each Purely Inspired container with 2 lbs. of protein powder, yielding a slack-fill of only 26%. *Id.* at ¶ 31. Hu then concludes that this comparison shows that the manufacturing process for Herbal Zen does not require that only 1.5 lbs. be placed in the package and therefore the product must contain nonfunctional slack-fill.

Importantly, Hu does not argue that Iovate mislabeled the Herbal Zen container by misrepresenting the weight. As evidenced by a picture attached to Hu's complaint, the Herbal Zen package discloses, in large, color-differentiated font, the actual amount of protein powder in each package. Doc. 1, ¶ 30.

## II.   LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Id*. Pleadings that tender "naked assertions devoid of further factual enhancement," *id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted), or "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555).

**III. DISCUSSION**[2]

In her complaint, Hu asserts that sections 349 and 350 of New York's General Business Law create a private cause of action for injuries caused by nonfunctional slack-fill because those sections make "deceptive acts or practices" and "false advertising" unlawful. Doc. 1, ¶¶ 65–90. Hu further alleges that her claims sound in common law fraud. Id. at ¶¶ 91–97.

Hu fails to state a claim upon which relief can be granted. "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000). New York has adopted an "objective definition of deceptive acts and practices." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). Under this standard, the deceptive practice must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman*, 731 N.E.2d at 611–12.

Generally, courts within this District have found that labels on packages that clearly indicate the product's weight prevent plaintiffs from succeeding on nonfunctional slack-fill claims. *Daniel v. Tootsie Roll Indus., LLC*, No. 17 CIV. 7541 (NRB), 2018 WL 3650015, at *11–*12 (S.D.N.Y. Aug. 1, 2018) (dismissing a nonfunctional slack-fill complaint because "[w]e can easily conclude, as a matter of law, that the slack-fill enclosed in the Products would not mislead a reasonable consumer, as the Product boxes provide more than adequate information for a consumer to determine the amount of Product contained therein"); *Alce v. Wise Foods, Inc.*,

---

[2] The Court has jurisdiction over this suit pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (d)(2), because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), because a member of the putative class is a citizen of a state different than Iovate, and because the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

No. 17 CIV. 2402 (NRB), 2018 WL 1737750, at *10 (S.D.N.Y. Mar. 27, 2018) (dismissing a nonfunctional slack-fill claim because "the weight of the chips enclosed is prominently displayed on the front of each Product, in large sized font, in a color differentiated from the package background, and there is no allegation that the full weight represented is not actually in the bag").

Outside of this District and interpreting analogous state laws, "[s]everal courts, including a district court within the Second Circuit, have held that reasonable consumers would not be misled by non-functional slack-fill as a matter of law where the products clearly disclosed accurate net weight and/or the total product count." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 190 (E.D.N.Y. 2018) (citing *Fermin v. Pfizer Inc.*, 215 F.Supp.3d 209, 212 (E.D.N.Y. 2016); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *Bush v. Mondelez Int'l, Inc.*, No. 16-CV-02460-RS, 2016 WL 5886886, at *3 (N.D. Cal. Oct. 7, 2016)).

Here, the Herbal Zen package discloses, in large, color-differentiated font, the actual amount of protein powder in each package. Doc. 1, ¶ 30. Given the prominence of this information, the Court finds, as a matter of law, that the allegedly nonfunctional slack-fill would not mislead a reasonable consumer acting reasonably under the circumstances.

The Court need not address the false advertising claim under General Business Law § 350. "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002). Because the claim fails under § 349, it also lacks merit under § 350.

To the same extent, the Court need not analyze Hu's common law fraud claim. To prove common law fraud, a plaintiff must show more than § 349 requires. *Stutman*, 731 N.E.2d at 612

("A deceptive practice, however, need not reach the level of common-law fraud to be actionable under section 349"). Because Hu has not satisfied the lower standard set by § 349, her claim for common law fraud necessarily fails.

In essence, Hu raises a single counterargument: Nonfunctional slack-fill will likely "mislead a reasonable consumer acting reasonably under the circumstances," despite a label that clearly states the product's weight, because state law incorporates federal law and because the Food and Drug Administration has stated that "label statements cannot correct nonfunctional or misleading fill." Doc. 26, 9. The Court does not regard this argument as compelling because "New York courts, as described above, have adopted an objective definition of what constitutes a 'material misrepresentation' under sections 349 and 350, which, unlike federal law, takes context into account." *Daniel*, No. 17 CIV. 7541 (NRB), 2018 WL 3650015, at *12 n.7 (internal quotation marks and citations omitted).

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Plaintiff's complaint is GRANTED. As a result, Plaintiff's motion for summary judgment and Defendant's motion to strike the class allegations are DISMISSED as moot. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 16, 19, 22, 30.

It is SO ORDERED.

Dated: October 11, 2018
      New York, New York

                                               Edgardo Ramos, U.S.D.J.